Michael J. Frevola
Christopher R. Nolan
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR DEFENDANTS
NORTH OFFSHORE AS and TROMS OFFSHORE AS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROLV BERG DRIVE AS,<br><br>                Plaintiff,<br><br>        -against-<br><br>NORTH OFFSHORE AS and TROMS<br>OFFSHORE AS,<br><br>                Defendants. | 07 Civ. 11502 (SHS) |

## **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO VACATE THIS COURT'S MARITIME ATTACHMENT ORDER**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................... 1

FACTUAL BACKGROUND & PROCEDURAL HISTORY ...................................................... 2

    A.   The North Offshore Matter ................................................................................................. 2

    B.   This Action............................................................................................................................ 3

ARGUMENT .................................................................................................................................. 7

POINT I RBD'S CLAIM HAS BEEN RULED FRIVOLOUS BY THIS COURT, HENCE IT
CANNOT NOW BE CONSIDERED A VALID *PRIMA FACIE* ADMIRALTY CLAIM .......... 9

POINT II RBD'S WHOLLY CONCLUSORY ALTER-EGO ALLEGATIONS AGAINST
TROMS OFFSHORE ARE NOT *PRIMA FACIE* CLAIMS......................................................... 11

POINT III THIS COURT SHOULD USE ITS INHERENT AUTHORITY TO VACATE THE
ATTACHMENT, AS TO NORTH OFFSHORE, ON EQUITABLE GROUNDS...................... 12

CONCLUSION............................................................................................................................. 18

## TABLE OF AUTHORITIES

### CASES

*Aqua Stoli Shipping Ltd. v. Gardner Smith PTY Ltd.*,
    384 F. Supp. 2d 726 (S.D.N.Y. 2005)......................................................................7

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
    460 F.3d 434 (2d Cir. 2006)......................................................7, 13, 14, 16, 17

*Bell Atlantic v. Twombley*,
    ___ U.S. ___, 127 S. Ct. 1955 (2007)......................................................................11

*Construction Exporting Enter. v. Nikki Maritime Ltd.*,
    558 F. Supp. 1372 (S.D.N.Y. 1983)......................................................16, 17

*Chiquita Int'l Ltd. v. M/V Bosse*,
    518 F. Supp. 2d 589 (S.D.N.Y. 2007)......................................12, 13, 14, 15, 16

*Dolco Inv., Ltd. v. Moonriver Dev., Ltd.*,
    486 F. Supp. 2d 261 (S.D.N.Y. 2007)......................................................................8

*Fesco Ocean Mgmt., Ltd. v. High Seas Shipping Ltd.*,
    No. 06 Civ. 1055, 2007 WL 766115 (S.D.N.Y. Mar. 12, 2007) ...............................8

*Greenwich Marine, Inc. v. S.S. ALEXANDRIA*,
    339 F.2d 901 (2d Cir. 1965)......................................................................12

*Maersk, Inc. v. Neewra*,
    443 F. Supp. 2d 519 (S.D.N.Y. 2006)......................................................................14

*North Offshore AS v. Rolv Berg Drive AS*,
    No. 07 Civ. 3095, 2007 WL 4233014 (S.D.N.Y. Nov. 29, 2007) ...................2, 3, 10

*Oilmar Co. Ltd. v. Energy Trans. Ltd.*,
    No. 3:03 cv 1121, 2003 WL 21976599 (D. Conn. 2003) ...............................16, 17

*OGI Oceangate Trans. Co. v. RP Logistics Pvt. Ltd.*,
    No. 06 Civ. 9441, 2007 WL 1834711 (S.D.N.Y. June 26, 2007)........................8, 11

*ProshipLine Inc. v. Aspen Infrastructures Ltd.*,
    07 Civ. 10969, 2008 WL 336471 (S.D.N.Y. Feb. 1, 2008) ...............................12, 14

*P.R. Ports Auth. v. Barge KATY-B*,
    427 F.3d 93 (1st Cir. 2005)......................................................................8

*Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil*,
   No. 06 Civ. 5296, 2006 WL 2474869 (S.D.N.Y. Aug. 28, 2006) ..........................................14

*Sonito Shipping Co. v. Sun United Maritime Ltd.*,
   478 F.Supp. 2d 532 (S.D.N.Y. 2007)...........................................................................................9

*Tide Line, Inc. v. Eastrade Commodities, Inc.*
   No. 06 Civ. 1979, 2006 WL 4459297 (S.D.N.Y. Aug. 15, 2006) ...........................................8

*T&O Shipping, Ltd. v. Lydia Mar Shipping Co.*,
   415 F. Supp. 2d 310 (S.D.N.Y. 2006).........................................................................................9

*United States v. 4492 S. Livania Rd.*,
   889 F.2d 1258, 1266 (2d Cir. 1989)............................................................................................8

*Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.*,
   519 F. Supp. 2d 399, 409 (S.D.N.Y. 2007).................................................................................8

## STATUTES

Federal Rule of Civil Procedure Supplemental Rule E(4)(f)......................................................7, 8

Federal Rule of Civil Procedure Supplemental Rule E(7)(a) ...................................................3, 16

Federal Rule of Civil Procedure Supplemental Rule E(2)(a) .....................................................1, 8

## PRELIMINARY STATEMENT

This motion to vacate the Court's *Ex Parte* Order for Process of Maritime Attachment dated December 26, 2007 (the "Attachment Order"), obtained by Plaintiff Rolv Berg Drive AS ("RBD" or "Plaintiff"), is brought by Defendants North Offshore AS ("North Offshore") and Troms Offshore AS ("Troms Offshore") (collectively "Defendants") and raises the following issues:

(1)    To sustain its maritime attachment, Plaintiff RBD has the burden of proving that it has a *prima facie* admiralty claim. Supplemental Rule E(2)(a) requires an admiralty plaintiff to plead its claim with heightened particularity and this Court already has ruled in a related proceeding that essentially the identical claim was "highly speculative" and "frivolous" on the facts before it. Should the Court maintain RBD's Attachment Order against North Offshore?

(2)    Plaintiff RBD has the burden of proving that it has a *prima facie* admiralty claim and Supplemental Rule E(2)(a) requires an admiralty plaintiff to plead its claim with heightened particularity. Plaintiff's only allegations that support its "claims" against Troms Offshore are made "upon information and belief." Should the Court maintain RBD's Attachment Order against Troms Offshore?

(3)    An otherwise valid Rule B attachment is subject to vacatur where the defendant is present in a convenient jurisdiction or is subject to *in personam* jurisdiction of the court. North Offshore had filed a lawsuit against RBD concerning the same disputes and RBD has a pending counterclaim in that initial proceeding. Should the Court maintain RBD's Attachment Order against North Offshore?

Defendants respectfully suggest that the answer to each of the foregoing questions is "no," and that the Court should grant Defendants' motion to vacate the Attachment Order.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

### A. The North Offshore Matter

North Offshore[1] entered into a time charter party with RDB on February 16, 2004 of the AHTS ALDOMA (the "Vessel") for a period of three years on the SUPPLYTIME 89 form (as amended) (the "Time Charter").  Affidavit Under Supplemental Rule B of Jeremy Harwood dated December 21, 2007 ("Harwood Aff."), Ex. E, Ex. 3, ¶ 3.[2]  Shortly after the commencement of the Time Charter, North Offshore entered into a separate "side agreement" with RBD dated March 5, 2004 that provided RBD with a possibility of extending the charter period of the ALDOMA in certain circumstances.  *Id.*, Ex. E, Ex. 1, ¶ 4.  RBD's rights to extend the ALDOMA's charter under the side agreement, however, specifically were subject "to [North] Offshore securing further charter with the vessel's owner." *Id.*

The Time Charter ended in or about May 2007, and North Offshore filed a Rule B action against RBD for, *inter alia*, outstanding hire in a related case pending before this Court entitled *North Offshore AS v. Rolv Berg Drive AS*, No. 07 Civ. 3095 (SHS) (the "North Offshore Matter"), which matter involves the same parties save Troms Offshore. *See North Offshore AS v. Rolv Berg Drive AS*, No. 07 Civ. 3095, 2007 WL 4233014 (S.D.N.Y. Nov. 29, 2007); *see also* Harwood Aff., Ex. A, p. 7.  RBD filed its Answer and Counterclaim on August 27, 2007.  On

---

[1]    As discussed in the Affirmation of Svein Hoel dated February 29, 2008 ("Hoel Aff."), annexed as Exhibit 1 to the accompanying Affidavit of Michael J. Frevola in Support of Defendants' Motion to Vacate Maritime Attachment dated February 29, 2008 ("Frevola MTV Aff."), North Offshore previously was known as TFDS Offshore AS before January 1, 2005. *See* Hoel Aff., ¶¶ 2-5. While a few early events occurred before the name change, Defendants use the term North Offshore for the purposes of consistency.

[2]    Exhibit E of the Harwood Aff. is the Declaration of Olav Vikøren dated December 23, 2007, and Exhibit 3 to the Vikøren Declaration is the Affirmation of Svein Hoel dated October 1, 2007 submitted in the North Offshore Matter.

October 1, 2007, North Offshore filed its memorandum of law in opposition to RBD's motion for counter-security arguing that: (1) RBD's counterclaim was not compulsory and therefore counter-security was not warranted under Supplemental Rule E(7)(a); (2) RBD's counterclaim was frivolous and filed only as an act of retaliation for North Offshore filing the Rule B action; and (3) North Offshore was financially unable to post counter-security.

At a pretrial conference between the parties on November 5, 2007, the Court considered RBD's motion for counter-security and rejected it, issuing an Order that same day.  Harwood Aff., Ex. D.  The Court subsequently issued its Memorandum Opinion, also reported at *North Offshore AS v. Rolv Berg Drive AS*, No. 07 Civ. 3095, 2007 WL 4233014 (S.D.N.Y. Nov. 29, 2007) (the "*North Offshore* Opinion"), further explaining the Court's November 5 Order.  *See also* Harwood Aff., Ex. C (unpublished version of *North Offshore* Opinion).  The *North Offshore* Opinion rejected the request for counter-security because, first, the counterclaim "appears frivolous and aimed primarily at thwarting North Offshore's prosecution of the original action; and second; North Offshore is not financially able to post countersecurity . . . ."  *North Offshore* Opinion, 2007 WL 4233014, at *4.  The Court in *dicta* also noted the counterclaim may not be a mandatory one for Rule E(7)(a) purposes, but did not reach a final determination on that issue. *Id*.  Although RBD's counter-security application was denied, its counterclaim remains pending in the North Offshore Matter.

### B.  This Action

On December 21, 2007, RBD filed this Rule B action against North Offshore and Troms Offshore.  The allegations of RBD's Verified Complaint are virtually identical in substance to RBD's counterclaim in the North Offshore Matter for which counter-security was denied. *Compare* RBD's Verified Complaint ¶¶ 7, 9-10, 22-23, *with* RBD's Answer & Counterclaim

-3-

dated August 27, 2007, ¶¶ 7-16.[3]  RBD seeks attachment of funds of up to $13,094,650 in support of its claim for breach of the side agreement.  Verified Complaint, ¶¶ 7, 9-10, 22.  RBD has asserted these side agreement claims in a proceeding filed against North Offshore in Nord-Troms County Court in Norway.  Verified Complaint, ¶¶ 10-11.  As noted by the Affirmation of Georg Scheel dated February 29, 2008 ("Scheel Aff."), however, RBD has not filed a claim against Troms Offshore in the Nord-Troms County Court.  See Frevola MTV Aff., Ex. 4, ¶ 8 (Ex. 4 is a true copy of the Scheel Aff.).  Rather, the claims against Troms Offshore solely are asserted here.

In this action, RBD has added Troms Offshore as a defendant, based on vague and conclusory statements or those asserted upon "information and belief."  See Verified Complaint, ¶¶ 15-18, 20.  In fact, Troms Offshore is not a contracting party under the Time Charter and has nothing to do with the side letter agreement at issue.  See Harwood Aff., Ex. E, Ex. 2 (enclosing Time Charter between TFDS Offshore AS – now North Offshore AS – and RBD) & Ex. 1 (side agreement between TFDS Offshore AS and RBD).

RBD merely alleges that, according to Troms Offshore's website, Troms Offshore presently is "operating" the Vessel, Verified Complaint, ¶ 14, and that to the extent that any hire payments are being remitted to the Vessel's owner AMNGR by any of North Offshore's subsidiaries they represent monies belonging to NOS being "siphoned through the subsidiaries."  Id. ¶ 15.  To refute RBD's speculative assertions with concrete facts, Defendants have submitted the accompanying Affirmation of Svein Hoel, dated February 29, 2008 (the "Hoel Aff."), which explains that Troms Offshore is a vessel management company which operates 14 separate

---

[3]     For ease of reference, copies of RBD's Verified Complaint in this proceeding (without exhibits) and RBD's Answer and Counterclaim in the North Offshore Matter are annexed as Exhibits 2 and 3, respectively, to the accompanying Frevola MTV Aff.

vessels for various shipowners, including the Norwegian government, two of which are vessels bareboat chartered by North Offshore. Hoel Aff., ¶¶ 21-24, 28. The Hoel Affirmation similarly refutes RBD's speculation that monies are being paid to the Vessel's owner AMNGR by some other entity by introducing the payment statements of the Vessel hire payments – ***all made by North Offshore to AMNGR*** – ranging back before the time that RBD commenced this proceeding. *Id.* ¶¶ 26-27, Exs. 6 & 7. These concrete facts conclusively rebut RBD's speculation as to Troms Offshore's actions alleged in order to try to manufacture an alter ego claim.

In addition to the speculative allegations above, RBD makes the following three allegations, all "[u]pon information and belief":

- "Defendant [Troms Offshore] is a shell corporation through which [North Offshore] conducts the charter business of the vessel." *Id.* ¶ 16;

- "Defendant [Troms Offshore] acts as a paying agent or receiving agent for hire and sub-hire payments for the vessel or arranges for non-parties to satisfy the debts and obligations of Defendant [North Offshore] . . . ." *Id.* ¶ 17;

- "Defendant [North Offshore] uses Defendant [Troms Offshoer] as a 'pass through' entity in order to insulate itself from charters relating to its commercial obligations." *Id.* ¶ 18.

The Hon. Denise L. Cote, sitting as Part I Judge, executed the Attachment Order on December 26, 2007. This Court accepted this matter as a related matter to the North Offshore Matter on January 4, 2008. In connection with the Attachment Order, JPMorgan Chase Bank, N.A. has attached a total of $596,508.44, broken down into the following four electronic funds transfers attached on the dates indicated:

- $290,631.00 attached on January 10, 2008 while being wired transferred from NIBC Bank Ltd. to Troms Offshore regarding the vessel SICAL-TORINO for January 2008. Frevola MTV Aff., ¶ 8.  The vessel SICAL-TORINO is owned by Sical Bergen Logistics PTY Ltd. and is managed by Troms Offshore.  Hoel Aff., ¶ 32.  Neither Troms Offshore nor North Offshore have any ownership interest in the SICAL-TORINO or Sical Bergen Logistics PTY Ltd.  *Id.*  The payment intercepted was originated from Sical Bergen Logistics PTY Ltd. to fund the January 2008 operational expenses of the vessel SICAL-TORINO.  *Id.*;

- $38.26 attached on January 16, 2008 while being wired transferred from Troms Offshore to a Belgian entity named Marlink.  Frevola MTV Aff., ¶ 9.  Neither Troms Offshore nor North Offshore have any ownership interest in Marlink.  Hoel Aff., ¶ 33.  The payment intercepted was a payment that Troms Offshore had made as the manager of the vessel SICAL-TORINO to satisfy that vessel's communications expenses.  *Id.*;

- $15,208.18 attached on January 22, 2008 while being wired transferred from Polish Manning Services Spolka to Troms Offshore regarding the vessel VIGEO OLUFUNKE as a final balance for December 2007.  Frevola MTV Aff., ¶ 10.  The VIGEO OLUFUNKE is owned by Vigeo Ltd. and managed by Troms Offshore.  Hoel Aff., ¶ 34. Neither Troms Offshore nor North Offshore have any ownership interest in the VIGEO OLUFUNKE or Polish Manning Services Spolka.  *Id.*  The payment intercepted was payment of the final balance of crew payments for the crew of the VIGEO OLUFUNKE for December 2007.  *Id.*;

- $290,631.00 attached on February 27, 2008 while being wired transferred from NIBC Bank Ltd. to Troms Offshore regarding the vessel SICAL-TORINO for February 2008. Frevola MTV Aff., ¶ 11. The payment intercepted was originated from Sical Bergen Logistics PTY Ltd. to fund the February 2008 operational expenses of the vessel SICAL-TORINO. Hoel Aff., ¶ 35.

Similar to the Vessel under charter to North Offshore, Troms Offshore manages the vessels SICAL-TORINO and VIGEO OLUFUNKE for their owners or charters. *Id.* ¶ 36. None of the $596,508.44 attached was being sent for or received on behalf of North Offshore. *Id.*

## ARGUMENT

RBD's Attachment Order should be vacated by this Court. In order to sustain an *ex parte* order of attachment pursuant to Rule B, the plaintiff must show:

> 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434, 436 (2d Cir. 2006).

Because "the ease with which a *prima facie* case for attachment can be made creates a real risk of abusive use of the maritime remedy," *Aqua Stoli Shipping Ltd. v. Gardner Smith PTY Ltd.*, 384 F. Supp. 2d 726, 729 (S.D.N.Y. 2005), *vacated on other grounds*, 460 F.3d 434 (2d Cir. 2006), Rule E(4)(f) provides any person claiming an interest in the attached property with "a prompt hearing at which the plaintiff shall be required to show why the . . . attachment should not be vacated or other relief granted consistent with these rules." Fed.R.Civ.P.Supp.R. E(4)(f).

When considering the adequacy of a plaintiff's claim, courts within this district have applied different standards. While some courts employ a more stringent "reasonable grounds"

evidentiary standard and assess the offering of proof a plaintiff produces in support of claim (and meeting its burden under Rule E(4)(f)), the majority of courts interpreting *Aqua Stoli* have applied the *prima facie* pleading standard when determining whether to uphold the plaintiff's maritime attachment. *See, e.g., OGI Oceangate Trans. Co. v. RP Logistics Pvt. Ltd.*, No. 06 Civ. 9441, 2007 WL 1834711, at *4 (S.D.N.Y. June 26, 2007) (collecting cases assessing both standards and ultimately joining the majority of courts in employing the *prima facie* standard); *Fesco Ocean Mgmt., Ltd. v. High Seas Shipping Ltd.*, No. 06 Civ. 1055, 2007 WL 766115, at *2 (S.D.N.Y. Mar. 12, 2007) (same).

Despite the *prima facie* admiralty claim standard, plaintiffs in admiralty suits remain subject to a heightened pleading standard under Rule E(2)(a):

> Suits in admiralty are subject to Supplemental Rule E(2)(a), which provides that:
>
> > In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.
>
> Fed.R.Civ.P. Supp. Rule E(2)(a). "This heightened pleading standard is not some pettifogging technicality meant to trap the unwary, but, rather, a legal rule designed to counterbalance the unique and drastic remedies that are available in *in rem* admiralty proceedings." *P.R. Ports Auth. v. Barge KATY-B*, 427 F.3d 93, 105 (1st Cir. 2005) (noting that "[o]rdinary notice pleading does not satisfy the stringencies of [the supplemental] rules").

*OGI Oceangate*, 2007 WL 1834711, at *4; *accord Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.*, 519 F. Supp. 2d 399, 409 (S.D.N.Y. 2007) (citing *United States v. 4492 S. Livonia Rd.*, 889 F.2d 1258, 1266 (2d Cir. 1989); *Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06 Civ. 1979, 2006 WL 4459297 (S.D.N.Y. Aug. 15, 2006)); *Dolco Inv., Ltd. v. Moonriver Dev., Ltd.,* 486 F. Supp. 2d 261, 272 (S.D.N.Y. 2007).

Here, the Court need not determine whether the reasonable grounds or *prima facie* standard is proper, as RBD's claim fails under even the more lenient *prima facie* test. As for RBD's alter-ego claims against Troms Offshore, RBD cannot support any of its speculative allegations, and the remainder of its allegations are made "upon information and belief," which not only are unfounded but which s a matter of law cannot be given any weight by the Court in deciding whether to uphold the Attachment Order. Accordingly, as discussed below, Defendants respectfully submit that the Attachment Order should be vacated.

## POINT I

### RBD'S CLAIM HAS BEEN RULED FRIVOLOUS BY THIS COURT, HENCE IT CANNOT NOW BE CONSIDERED A VALID *PRIMA FACIE* ADMIRALTY CLAIM

RBD's side agreement claim is not a valid *prima facie* admiralty claim. There is a difference between asserting an admiralty claim and a valid *prima facie* admiralty claim under *Aqua Stoli*. *See T&O Shipping, Ltd. v. Lydia Mar Shipping Co.*, 415 F. Supp. 2d 310, 312 (S.D.N.Y. 2006). As recently stated by Judge Haight,

> It is common ground that a charter party is a maritime contract, so [plaintiff] is asserting an "admiralty claim" against [defendant]; but is it a *valid* "prima facie admiralty claim," as Rule B requires? This is a question of substantive law.

*Sonito Shipping Co. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532, 536 (S.D.N.Y. 2007) (emphasis in original).

RBD alleges the side agreement claims are maritime, thus entitling RBD to a Rule B attachment. Verified Complaint, ¶ 10. Whether the side agreement claim is a maritime claim or not, RBD has not asserted a *valid prima facie* admiralty claim. As previously noted, RBD's side agreement claim here mirrors its counterclaim in the North Offshore Matter. RBD has not asserted any other claim here, nor has it alleged any other claim in its Norwegian proceeding. *Id.*

¶¶ 7, 9-10.  RBD's Verified Complaint states that the side agreement "is the basis for this action."  *Id.* ¶ 7.  The Vikøren Declaration reaffirms this fact, and confirms that RBD's Norwegian action concerns the "side letter disputes" between North Offshore and RBD.  Harwood Aff., Ex. E, ¶¶ 2-4.

This Court may take judicial notice of its *North Offshore* Opinion.  While this Court made clear that its *North Offshore* Opinion was not an ultimate ruling on the merits, it held that RBD's side agreement counterclaim was "highly speculative" and "frivolous" on the record before it.  *North Shore* Opinion, 2007 WL 4233014, at *3, *4.  In so holding, this Court ruled that it was not possible to extend the side agreement "because the condition precedent to that extension – the consent of [the Vessel's owner] – was not fulfilled based on a commercial decision by [the shipowner]."  *Id.* at *3.  Nothing has changed since the Court carefully assessed RBD's allegations and the evidence presented to it at oral argument after written submissions.  Indeed, RBD never moved for reconsideration of the *North Offshore* Opinion, nor filed a notice of appeal to the Second Circuit.

Furthermore, despite this Court's characterization of RBD's counterclaim as "highly speculative" and "frivolous" based on the record before the Court, RBD has introduced no new evidence whatsoever in its Verified Complaint to buttress the strength of its claims.  Hence, there is no reason for this Court to revisit the merits of RBD's claims.

RBD cannot repackage its speculative counterclaim in a new "related action" and hold it forth as valid when this Court already has found that same claim – on virtually identical allegations and without augmenting evidence – was "highly speculative" and "frivolous."  Accordingly, Defendants respectfully submit that RBD has failed to assert a valid *prima facie* admiralty claim.  Hence, this Court's Order of Attachment should be vacated.

## POINT II

### RBD'S WHOLLY CONCLUSORY ALTER-EGO ALLEGATIONS AGAINST TROMS OFFSHORE ARE NOT *PRIMA FACIE* CLAIMS

Should the Court find that RBD's claims against North Offshore fail to satisfy the *prima facie* admiralty claim inquiry, there is no need to address the sufficiency of RBD's derivative alter ego claims against Troms Offshore. *See OGI Oceangate*, 2007 WL 1834711, at *6.

Even if the Court considers RBD's alter ego allegations, however, they are wholly conclusory and must fail. As discussed in detail in Troms Offshore's motion to dismiss, filed in conjunction with this motion, RBD's claims against Troms Offshore fail to state a *prima facie* admiralty claim for the following reasons:

Under the recently-decided *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955 (2007), a complaint may be dismissed pursuant to Federal Rule 12(b)(6) where it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. Examining RBD's claims against Troms Offshore under U.S. law reveals that the allegations made by RBD commonly have been rejected as sufficient to support a finding of a *prima facie* admiralty claim against an alter ego, because RBD's claims contain no specific allegations of conduct but rather merely recite legal conclusions.

More significantly, however, Norwegian law should govern RBD's alter ego claims. Under Norwegian law, establishing an alter ego claim is extremely difficult and it cannot be accomplished on the facts alleged in RBD's Verified Complaint.

For these reasons, RBD has failed to state a *prima facie* admiralty claim against Troms Offshore and the Attachment order against Troms Offshore should be vacated.

## POINT III

### THIS COURT SHOULD USE ITS INHERENT AUTHORITY TO VACATE THE ATTACHMENT, AS TO NORTH OFFSHORE, ON EQUITABLE GROUNDS

Even if the technical requirements for a Rule B attachment have been met, the Second

Circuit in *Aqua Stoli* provided three equitable grounds wherein an attachment may be vacated:

> 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

460 F. 3d at 436.

Under certain circumstances, courts can expand these "guidelines" per their "'inherent

authority to vacate an attachment upon a showing of any improper practice or a manifest want of

equity on the part of plaintiff.'" *Chiquita Int'l Ltd. v. M/V Bosse*, 518 F. Supp. 2d 589, 597-98

(S.D.N.Y. 2007) (internal quotations omitted) (citing cases); *accord ProShipLine Inc. v. Aspen*

*Infrastructures Ltd.*, 07 Civ. 10969, 2008 WL 336471, at *7 (S.D.N.Y. Feb. 1, 2008) (citations

omitted); *see also Greenwich Marine, Inc. v. S.S. ALEXANDRIA*, 339 F.2d 901, 905 (2d Cir.

1965) ("The inherent power to adapt an admiralty rule to the equities of a particular situation is

entrusted to the sound discretion of the district judge.").

The *M/V Bosse* court, facing similar circumstances to the matter at bar, vacated an

attachment because the plaintiff abused the Rule B attachment process. In *M/V Bosse*, the court

addressed issues concerning two separate Rule B actions initiated by nearly the same parties

arising out of damages suffered from delays in shipping Chiquita bananas. 518 F. Supp. 2d at

591 (referring to the separate Rule B actions as the "Chiquita Action" and the "Bosse Action").

It is important to address the parties involved in both actions because it impacts the issues before

this Court. The Chiquita Action involved plaintiffs Chiquita International Limited ("Chiquita")

and Great White Fleet Limited ("GWF") obtaining a Rule B Order against defendants *M/V Bosse* (the Vessel), Bosse Shipping Ltd. ("Bosse") and Holy House Shipping AB ("Holy House"), resulting from the cargo-delay damages. *Id*.

Separately, and while the Chiquita action was still pending, Bosse filed a Rule B action against GWF also in the Southern District of New York seeking damages arising out of the Chiquita bananas shipment by way of fines, bunkering costs, and indemnity for any monies owed to Chiquita in the Chiquita Action. *Id*. at 592. In both Actions, defendants filed motions to vacate the attachments on various grounds. Focusing on the Bosse Action, the court declined to address the merits of the arguments because it has nothing to do with whether a *prima facie* claim had been shown, along with whether the technical requirements for a Rule B had been met. *Id*. at 597. Instead, the court focused on the three equitable guidelines set forth by the *Aqua Stoli* court and found that the plaintiff Bosse had run afoul of at least two of them: "1) the defendant is subject to suit in a convenient adjacent jurisdiction; [and] 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located." *M/V Bosse*, 518 F. Supp. 2d at 598 (quoting *Aqua Stoli*, 460 F.3d at 444).

In particular, the court noted that defendant GWF in the Bosse Action was subject to suit in a convenient jurisdiction, the Southern District, where it had initiated the Chiquita Action. In other words, because GWF was present in the Southern District of New York by virtue of having initiated the Chiquita Action, Bosse's attempt to use Rule B failed because GWF already was present within the jurisdiction on the dispute at issue. Moreover, concerning the second equitable guideline, the plaintiff could obtain *in personam* jurisdiction over defendant GWF in the Southern District because of the Chiquita Action. *Id*. By filing a separate Rule B action and attaching assets when it already had jurisdiction over defendant GWF in the Chiquita Action, the

-13-

court found that defendant Bosse abused the attachment process by violating the equitable guidelines set forth in *Aqua Stoli*:

> Essentially, Bosse abused the attachment process and took advantage of the *ex parte* nature of a Rule B order, despite Bosse's knowledge that GWF already was before the Southern District of New York in the related *Chiquita* action arising out of the same facts and between the same parties. The purpose of a maritime attachment is to "secure jurisdiction over an absent party and to get security for a potential judgment where the absent party's assets are transitory." *Aqua Stoli Shipping Ltd.*, 460 F.3d at 435. GWF, however, was not an "absent party," and securing jurisdiction was unnecessary considering the pending *Chiquita* action. Given Bosse's knowledge of the pending *Chiquita* action, seeking an *ex parte* order of attachment in the *Bosse* action was an improper practice and showed a want of equity on the part of Bosse. *See Maersk, Inc.*, 443 F.Supp.2d at 528. Ultimately, Bosse's actions are not in accordance with the purposes of maritime attachments.

*M/V Bosse*, 518 F. Supp. at 599-600.[4]  As a result of the plaintiff's improper acts, the *M/V Bosse* court granted the defendant's motion to vacate. *Id*. at 600.

A few weeks ago, Judge Sweet followed Judge Leisure's *M/V Bosse* decision with a similar holding in *ProShipLine*. *See ProShipLine*, 2008 WL 336471, at *6 (multiple quotations from *M/V Bosse*). In *ProShipLine*, Judge Sweet vacated a Rule B attachment obtained by a defendant in one Rule B action (ProShipLine) which then had filed a separate Rule B proceeding based on counterclaims that could be alleged in the original Rule B proceeding. Judge Sweet vacated ProShipLine's Rule B order and attachment after learning that ProShipLine – like RBD here – already had jurisdiction over its adversary in the Southern District of New York based on the initial Rule B proceeding. As Judge Sweet concluded,

---

[4]    The *M/V Bosse* court also relied on *Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil*, No. 06 Civ. 5296, 2006 WL 2474869, at *2 (S.D.N.Y. Aug. 28, 2006), which concerned the vacating of an attachment order where the action was "wholly duplicative" of another prior pending action. While the case here is not wholly duplicative of the North Offshore Matter, for the same reasons set forth by the *M/V Bosse* court, RBD has violated the spirit of the Rule B process by naming North Offshore here when it already has jurisdiction over it in the North Offshore Matter and RBD's claims still remain pending in the North Offshore Matter.

> Instead of appearing in the First New York Action . . ., where it would be entitled to assert a counterclaim and to seek counter security, ***ProShipLine filed a separate lawsuit knowing that Aspen was before the Court and yet still asserted that Aspen was not "found" within the District. ProShipLine's maritime attachment must be vacated.***

*Id.* (emphasis added).

Here, RBD's actions are substantially similar to those of Bosse in *M/V Bosse* and ProShipLine in *ProShipLine*. North Offshore is subject to suit in this District in the prior pending North Offshore Matter. The Court's November 5, 2007 order denied RBD's motion for counter-security. Notably, this Court ***did not dismiss RBD's counterclaim and that counterclaim remains pending in the North Offshore Matter***. RBD still has the right to pursue its counterclaim in the prior pending North Offshore Matter. With respect to the second equitable guideline, there is no issue concerning RBD's ability to obtain personal jurisdiction over North Offshore in the Southern District again because of the North Offshore Matter. North Offshore has submitted to this Court's jurisdiction with regard to these disputes by filing the North Offshore Matter. Hence, RBD, like defendant Bosse in *M/V Bosse*, showed a "want of equity" when seeking filing a separate Rule B action.

As noted by the *ProShipLine* decision, RBD's course of action was to defend in the North Offshore Matter and – if it desired to do so – obtain counter-security with a well pled counterclaim. RBD did not have the right (1) to commence a duplicative action on the same claims still pending in the North Offshore Matter and (2) obtain the Attachment Order by representing that North Offshore cannot be "found" in the Southern District of New York.

Though this action involves the same parties, and is before the same court as another pending Rule B action, RBD will attempt to distinguish the findings in *M/V Bosse* by noting that plaintiff Bosse did not even mark its case as "related" when filing, and that there was no question

of whether the same events were at issue in both Rule B proceedings. Here, it appears RBD did recognize this case as related by referring to the North Offshore Action as the "Related Rule B Action" in its Verified Complaint (*see* ¶ 6). But this is a distinction without a difference for jurisdiction purposes – it merely means plaintiff Bosse was more underhanded than RBD is here.

Nevertheless, RBD was able to obtain an order and writ from a Part I judge based on filing this as a separate action. RBD will also claim its Rule B action does not involve the same events as the North Offshore Matter. *See* Verified Complaint, ¶ 7 (noting North Offshore's argument that the side agreement was a "separate transaction or occurrence"). This is incorrect. Whether the charter party in the North Offshore Matter and RBD's side agreement involve the same transaction or occurrence for Rule E(7) purposes has nothing to do with the jurisdiction issue the *Aqua Stoli* and *M/V Bosse* courts were concerned with. Should this Court deny North Offshore's motion to vacate and let this action stand, the ***exact same side agreement issue*** will be addressed both in the North Offshore Matter and here. The only difference is in the prior pending Rule B action the side agreement issues were raised as a counterclaim while here the issues are couched as a affirmative claim. This is a distinction without a difference for jurisdiction purposes as the same issue would be heard twice. This makes no sense from a judicial efficiency standpoint and supports the vacating of the Attachment Order.[5]

Finally, apparently recognizing its aggressive posture in seeking its own Rule B attachment, RBD filed a memorandum of law dated December 21, 2007 in support of its request for the Attachment Order ("Memo of Law" at p. 11), and summarily stated that none of the *Aqua Stoli* exceptions applied. The Memo of Law also relies on *Construction Exporting Enter. v. Nikki Maritime Ltd.*, 558 F. Supp. 1372 (S.D.N.Y. 1983), and *Oilmar Co. Ltd. v. Energy Trans.*

---

[5]    It should also be noted that RBD, as it must, conceded in its pleading that this action was a "related" action to the North Offshore Matter. Verified Complaint, ¶ 6.

*Ltd.*, No. 3:03CV1121, 2003 WL 21976599 (D. Conn. 2003), in support of its filing a separate complaint when a prior action was filed involving the same parties in this District. Memo of Law, at pp. 4-5. RBD's position cannot be sustained.

First, it should be noted RBD ignored the holding in *M/V Bosse* which deals with this exact issue and the *Aqua Stoli* equitable grounds. North Offshore is present in pending the North Offshore Matter, as well as the counterclaim against North Offshore. For the reasons stated above, *vacatur* is proper.

Second, both *Nikki Maritime* and *Oilmar*, **pre-*Aqua Stoli* cases**, are distinguishable. *Nikki Maritime* concerned the vacatur of attachment by filing a general appearance. 558 F. Supp. at 1375. North Offshore's presence in the North Offshore Matter goes beyond a general appearance. When North Offshore affirmatively filed suit in the Southern District of New York against RBD, RBD had the right to file a counterclaim against North Offshore. It did, and that claim remains pending in the North Offshore Matter.

*Oilmar* concerns whether the technical requirements of an attachment were satisfied, and specifically whether the entity was "found within the district" for attachment purposes because of the separate Rule B action. 2003 WL 21976599, at *1-2. Here, North Offshore concedes the Rule B **technical requirements** have been satisfied by RBD. But RBD's Attachment Order should still be vacated on **equitable grounds** for the reasons stated above.

## CONCLUSION

Because the Court already has ruled that Rolv Berg Drive's side letter claim – as presented – is frivolous and highly speculative, because the claims against Troms Offshore fail to state *prima facie* admiralty claims, and because Rolv Berg Drive acted inequitably in obtaining the Attachment Order when Defendant North Offshore already was present in this District, Defendants respectfully request that the Court grant Defendants' motion to vacate the Attachment Order, along with such other and further relief as this Court deems fair and just.

Dated: New York, New York
       February 29, 2008

HOLLAND & KNIGHT LLP

By: _____
      Michael J. Frevola
      Christopher R. Nolan
      195 Broadway
      New York, New York 10007
      (212) 513-3200

      *Attorneys for Defendants*

# 5077532_v1