Michael J. Frevola
Christopher R. Nolan
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR DEFENDANTS
NORTH OFFSHORE AS and TROMS OFFSHORE AS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROLV BERG DRIVE AS,<br><br>        Plaintiff,<br><br>    -against-<br><br>NORTH OFFSHORE AS and TROMS<br>OFFSHORE AS,<br><br>        Defendants. | 07 Civ. 11502 (SHS) |

**MEMORANDUM OF LAW OF DEFENDANT TROMS OFFSHORE AS
IN SUPPORT OF ITS MOTION FOR DISMISSAL**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS .......................................................................................2

    A.   NORTH OFFSHORE'S HISTORY ......................................................................2

    B.   THE NORTH OFFSHORE MATTER ...................................................................3

    C.   THIS ACTION.............................................................................................5

ARGUMENT .....................................................................................................8

POINT I RBD'S VERIFIED COMPLAINT DOES NOT ASSERT A LEGALLY
COGNIZABLE CLAIM AGAINST TROMS OFFSHORE AS IT COMPLETELY FAILS
TO PROPERLY ALLEGE ANY FACTS TO SUPPORT ITS ALTER EGO CLAIM
UNDER FEDERAL COMMON LAW ..........................................................................10

POINT II NOT ONLY DOES RBD'S CLAIM AGAINST TROMS OFFSHORE FAIL
UNDER U.S. LAW, BUT ALSO *LAURITZEN* AND ITS PROGENY MANDATE
ANALYSIS OF RBD'S CLAIMS UNDER NORWEGIAN LAW ..............................................19

POINT III  RBD'S ALLEGATIONS AGAINST TROMS OFFSHORE DO NOT ASSERT
A LEGALLY COGNIZABLE CLAIM BECAUSE THEY COMPLETELY FAIL TO
PROPERLY ALLEGE ANY FACTS TO SUPPORT ITS ALTER EGO CLAIM UNDER
NORWEGIAN LAW............................................................................................21

CONCLUSION................................................................................................23

## **TABLE OF AUTHORITIES**

### CASES

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007).................................................................................9

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
  464 F.3d 338 (2d Cir. 2006)..............................................................................9

*Arista Records, LLC v. Lime Group LLC*,
  No. 06 Civ. 5936, 2007 WL 4267190 (S.D.N.Y. Dec. 3, 2007)...............................8

*Bell Atlantic Corp. v. Twombly*,
  ___ U.S. ___, 127 S. Ct. 1955 (2007)..............................................8, 9, 18, 23

*Bergesen, d.y. A/S v. Magnus Lindholm*,
  760 F. Supp. 976 (D. Conn. 1991).....................................................................12

*Brave Bulk Trans Ltd. v. Spot On Shipping Ltd.*,
  No. 07 Civ. 4546, 2007 WL 3255823 (S.D.N.Y. Oct. 30, 2007).....................14, 16

*Brave Bulk Trans Ltd. v. Spot On Shipping Ltd.*,
  No. 07 Civ. 4546, 2007 WL 2734291 (S.D.N.Y. Sept. 17, 2007).........................15

*Carbotrade, S.P.A. v. Bureau Veritas*,
  99 F.3d 86 (2d Cir. 1996)..................................................................................20

*Cruz v. Beto*,
  405 U.S. 319 (1972)...........................................................................................9

*Dolco Inv., Ltd. v. Moonriver Dev. Ltd.*,
  486 F. Supp. 2d 261 (S.D.N.Y. 2007)...............................................10, 11, 12, 15

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003)..........................................................................................10

*Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*,
  782 F.2d 329 (2d Cir. 1986)..........................................................................10, 11

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
   228 F.R.D. 508 (S.D.N.Y. 2005) ........................................................................11

*In re Elevator Antitrust Litigation*, 502 F.3d 47 (2d Cir. 2007).........................................18

*Farbstein v. Hicksville Public Library*, No. 06 Civ. 0907, 2007 WL 3407434
   (2d Cir. Nov. 15, 2007) .............................................................................................18

*Fesco Ocean Mgmt., Ltd. v. High Seas Shipping Ltd.*,
   No. 06 Civ. 1055, 2007 WL 766115 (S.D.N.Y. Mar. 12, 2007) ........................................16, 17

*Frank v. U.S. West, Inc.*,
   3 F.3d 1357 (10th Cir. 1993).........................................................................10

*Freeman v. Complex Computing Co.*,
   119 F.3d 1044 (2d Cir. 1997)........................................................................12

*Gyadu v. Hartford Ins. Co.*, 197 F.3d 590 (2d Cir. 1999).............................................18

*Hellenic Lines Ltd. v. Rhoditis*,
   398 U.S. 306 (1970)......................................................................................19

*In re Holborn Oil Trading Ltd.*,
   774 F. Supp. 840 (S.D.N.Y. 1991) ...................................................................12

*Iqbal v. Hasty*,
   490 F.3d 143 (2d Cir. 2007).....................................................................8, 18

*Lauritzen v. Larsen*,
   345 U.S. 571 (1953)......................................................................................19

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC*,
   268 F.3d 58 (2d Cir. 2001)..........................................................................12

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993).........................................................................9

*Murray v. Miner*,
   74 F.3d 402 (2d Cir. 1996).........................................................................10

*North Offshore AS v. Rolv Berg Drive AS*,
   No. 07-3095-SHS, 2007 WL 4233014 (S.D.N.Y. Nov. 29, 2007) ..........................................4

*P.R. Ports Auth. v. BARGE KATY-B*,
   427 F.3d 93 (1st Cir. 2005)..........................................................................11

*Paycom Billing Servs. v. Mastercard Int'l, Inc.*,
    467 F.3d 283 (2d Cir. 2006)..................................................................................9

*Romero v. Int'l Terminal Operating Co.*,
    358 U.S. 354 (1959)........................................................................................19

*Scheidman v. Qatar Football Ass'n*,
    No. 04 Civ. 3432, 2008 WL 144846 (S.D.N.Y. Jan. 15, 2008)...............................10

*S.E.C. v. Lyon*, No. 06 Civ. 14338, __ F. Supp. 2d ___,
    2008 WL 53102 (S.D.N.Y. Jan. 2, 2008) ...............................................................9

*Shamis v. Ambassador Factors Corp.*,
    34 F. Supp. 2d 879 (S.D.N.Y. 1999)....................................................................13

*Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06 Civ. 1979,
    2006 WL 4459297, 2007 A.M.C. 252 (S.D.N.Y. Aug. 15, 2006)...........................13

*Wajilam Exports Pte. Ltd. v. ATL Shipping Ltd.*,
    475 F. Supp. 2d 275 (S.D.N.Y. 2006)..................................................................12

## STATUTES

5 Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1215 ..................14

Federal Rule of Civil Procedure 9(b)..........................................................................11

Federal Rule of Civil Procedure 8(a)..........................................................................14

Federal Rule of Civil Procedure 12(b)(6)…..............................................................8, 9

Federal Rule of Civil Procedure  Supplemental Rule E(2)(a) ...........................11, 13, 23

## PRELIMINARY STATEMENT

Defendant Troms Offshore AS ("Troms Offshore") submits this Memorandum of Law in support of its motion to dismiss the claims of plaintiff Rolv Berg Drive AS ("RBD") against Troms Offshore. Troms Offshore's motion to dismiss presents the following issues:

(1)    To properly state a claim to pierce the corporate veil, RBD must allege sufficient facts to make a plausible claim that North Offshore has engaged in fraud or exercised dominion and control over Troms Offshore such that it should be held liable for North Offshore's actions. RBD's complaint does not allege fraud and contains no specific facts supporting its alter ego claim. Should this Court dismiss RBD's complaint for failure to state a claim?

(2)    Under maritime choice of law principles, the Court should consider the *Lauritzen* factors regarding the parties' connections with various fora in determining which laws to apply. RBD has filed a Norwegian law declaration, all the parties are Norwegian corporations, the place of the alleged wrongful acts is Norway, the dispute concerns a document executed in Norway, and the underlying claims have been filed in the Norwegian courts. Should this Court apply Norwegian law?

(3)    Under Norwegian law, veil-piercing is an extremely rare device found to be valid only in the most limited circumstances. The allegations in RBD's complaint do not state any of the behavior required under Norwegian law to state a potential claim for veil-piercing under Norwegian law. Should this Court dismiss RBD's complaint for failure to state a claim?

It is respectfully submitted that the answer to all of the questions above should be "yes," and that the Court should grant Troms Offshore's motion to dismiss.

## STATEMENT OF FACTS

### A. North Offshore's History

North Offshore AS previously was named TFDS Offshore AS. Affirmation of Svein Hoel dated February 29, 2008 ("Hoel Aff."), ¶ 1. Prior to January 1, 2005, TFDS Offshore AS was a wholly-owned subsidiary of a large Norwegian shipping company called Troms Fylkes Dampskipsselskap ASA ("Troms County Steamship Company"). *Id.* ¶¶ 2, 5. Svein Hoel was the managing Director of TFDS Offshore AS. *Id.* ¶ 2.

As the subsidiary of Troms Fylkes Dampskipsselskap ASA, TFDS Offshore AS owned seven ships itself. *Id.* ¶ 3. TFDS Offshore AS also managed two Norwegian vessels that were serving the Norwegian government. *Id.* It also had bareboat chartered in two Russian vessels, one of which was the AHTS ALDOMA (the "Vessel"), which Vessel is the subject matter of the parties' disputes herein. *Id.*

In November 2004, all of the ships owned by TFDS Offshore AS were sold by TFDS Offshore AS to another Norwegian company. *Id.* ¶ 4. This left TFDS Offshore AS with responsibility for managing the two vessels serving the Norwegian government and as the bareboat charterer of the two Russian owned vessels. *Id.* At the end of December 2004, Svein Hoel made an offer along with his business partner (through their private company Hoel Holding AS) to purchase TFDS Offshore AS from Troms Fylkes Dampskipsselskap ASA. *Id.* ¶ 5. That offer was accepted and the sale was completed in March 2005, the agreement provided that the transfer of ownership would be backdated to January 1, 2005, and TFDS Offshore AS became a subsidiary of Hoel Holding AS. *Id.* As a provision in the sales agreement required the name of TFDS Offshore AS to be changed, the purchasers changed the name of TFDS Offshore AS to North Offshore AS. *Id.*

As detailed in full in the accompanying Hoel Affirmation, North Offshore subsequently gained investors and expanded, eventually creating a wholly-owned, separate ship management company named Troms Offshore that presently manages 14 vessels for a variety of foreign owners and even the Norwegian government. North Offshore continued to act as a vessel owner, chartering out the Russian bareboat chartered vessels on various charter parties.

Recently, in November 2007, North Offshore entered into an agreement with two investors, the Klaveness Group and Pareto Growth, by which agreement those companies have committed to invest significant amounts of new capital in exchange for taking 65% ownership of North Offshore's shares. *Id.* ¶ 10. While Svein Hoel remains the Managing Director of North Offshore, he now manages North Offshore in company with directors appointed by these new investors. *Id.*

## B. The North Offshore Matter

North Offshore entered into a time charter party with RBD on February 16, 2004 of the AHTS ALDOMA (the "Vessel") for a period of three years on the SUPPLYTIME 89 form (as amended) (the "Time Charter"). Affidavit Under Supplemental Rule B of Jeremy Harwood dated December 21, 2007 ("Harwood Aff."), Ex. E, Ex. 3, ¶ 3.[1] Shortly after the commencement of the Time Charter, North Offshore entered into a separate "side agreement" with RBD dated March 5, 2004 that provided RBD with a possibility of extending the charter period of the ALDOMA in certain circumstances. *Id.*, Ex. E, Ex. 1, ¶ 4. RBD's rights to extend the ALDOMA's charter under the side agreement, however, specifically were subject "to [North] Offshore securing further charter with the vessel's owner." *Id.*

---

[1]    Exhibit E of the Harwood Aff. is the Declaration of Olav Vikøren dated December 23, 2007, and Exhibit 3 to the Vikøren Declaration is the Affirmation of Svein Hoel dated October 1, 2007 submitted in the North Offshore Matter.

The Time Charter ended in or about May 2007, and North Offshore filed a Rule B action against RBD for, *inter alia*, outstanding hire in a related case pending before this Court entitled *North Offshore AS v. Rolv Berg Drive AS*, No. 07 Civ. 3095 (SHS) (the "North Offshore Matter"), which matter involves the same parties save Troms Offshore. *See North Offshore AS v. Rolv Berg Drive AS*, No. 07 Civ. 3095, 2007 WL 4233014 (S.D.N.Y. Nov. 29, 2007); *see also* Harwood Aff., Ex. A, p. 7. RBD filed its Answer and Counterclaim on August 27, 2007. On October 1, 2007, North Offshore filed its memorandum of law in opposition to RBD's motion for counter-security arguing that: (1) RBD's counterclaim was not compulsory and therefore counter-security was not warranted under Supplemental Rule E(7)(a); (2) RBD's counterclaim was frivolous and filed only as an act of retaliation for North Offshore filing the Rule B action; and (3) North Offshore was financially unable to post counter-security.

At a pretrial conference between the parties on November 5, 2007, the Court considered RBD's motion for counter-security and rejected it, issuing an Order that same day. Harwood Aff., Ex. D. The Court subsequently issued its Memorandum Opinion, also reported at *North Offshore AS v. Rolv Berg Drive AS*, No. 07 Civ. 3095, 2007 WL 4233014 (S.D.N.Y. Nov. 29, 2007) (the "*North Offshore* Opinion"), further explaining the Court's November 5 Order. *See also* Harwood Aff., Ex. C (unpublished version of *North Offshore* Opinion). The *North Offshore* Opinion rejected the request for counter-security because, first, the counterclaim "appears frivolous and aimed primarily at thwarting North Offshore's prosecution of the original action; and second; North Offshore is not financially able to post countersecurity . . . ." *North Offshore* Opinion, 2007 WL 4233014, at *4. The Court in *dicta* also noted the counterclaim may not be a mandatory one for Rule E(7)(a) purposes, but did not reach a final determination on that issue.

*Id.* Although RBD's counter-security application was denied, its counterclaim remains pending in the North Offshore Matter.

### C. This Action

On December 21, 2007, RBD filed this Rule B action against North Offshore and Troms Offshore. RBD seeks attachment of funds of up to $13,094,650 in support of its claim for breach of the side agreement. Verified Complaint, ¶¶ 7, 9-10, 22. RBD has asserted these side agreement claims in a proceeding filed against North Offshore in Nord-Troms County Court in Norway. Verified Complaint, ¶¶ 10-11. As set forth in the accompanying Affirmation of Georg Scheel, dated February 29, 2008 ("Scheel Aff."), however, RBD has not filed a claim against Troms Offshore in the Nord-Troms County Court. Scheel Aff., ¶ 8. Rather, the claims against Troms Offshore solely are asserted here.

In this action, RBD has added Troms Offshore as a defendant, based on vague and conclusory statements or those asserted "[u]pon information and belief." *See* Verified Complaint, ¶¶ 15-18, 20. In fact, Troms Offshore is not a contracting party under the Time Charter and has nothing to do with the side letter agreement at issue. *See* Harwood Aff., Ex. E, Ex. 2 (enclosing Time Charter between TFDS Offshore AS – now North Offshore AS – and RBD) & Ex. 1 (side agreement between TFDS Offshore AS and RBD).

RBD merely alleges that, according to Troms Offshore's website, Troms Offshore presently is "operating" the Vessel, Verified Complaint, ¶ 14, and that to the extent that any hire payments are being remitted to the Vessel's owner AMNGR by any of North Offshore's subsidiaries they represent monies belonging to NOS being "siphoned through the subsidiaries." *Id.* ¶ 15. To refute RBD's speculative assertions with concrete facts, Defendants have submitted the accompanying Hoel Affirmation, which explains that Troms Offshore is a vessel

management company which operates 14 separate vessels for various shipowners, including the Norwegian government, two of which are vessels bareboat chartered by North Offshore.  Hoel Aff., ¶¶ 21-24, 28.  The Hoel Affirmation similarly refutes RBD's speculation that monies are being paid to the Vessel's owner AMNGR by some other entity by introducing the payment statements of the Vessel hire payments – *all made by North Offshore to AMNGR* – ranging back before the time that RBD commenced this proceeding.  *Id.* ¶¶ 26-27, Exs. 6 & 7.  These concrete facts conclusively rebut RBD's speculation as to Troms Offshore's actions alleged in order to try to manufacture an alter ego claim.

Besides this speculation – rather than any verifiable fact – RBD makes the following three allegations, all "[u]pon information and belief":

- "Defendant [Troms Offshore] is a shell corporation through which [North Offshore] conducts the charter business of the vessel." *Id.* ¶ 16;

- "Defendant [Troms Offshore] acts as a paying agent or receiving agent for hire and sub-hire payments for the vessel or arranges for non-parties to satisfy the debts and obligations of Defendant [North Offshore] . . . ." *Id.* ¶ 17;

- "Defendant [North Offshore] uses Defendant [Troms Offshore] as a 'pass through' entity in order to insulate itself from charters relating to its commercial obligations." *Id.* ¶ 18.

The Hon. Denise L. Cote, sitting as Part I Judge, executed the Attachment Order on December 26, 2007.  This Court accepted this matter as a related matter to the North Offshore Matter on January 4, 2008.  In connection with the Attachment Order, JPMorgan Chase Bank, N.A. has attached a total of $596,508.44, broken down into the following four electronic funds transfers attached on the dates indicated:

- $290,631.00 attached on January 10, 2008 while being wired transferred from NIBC Bank Ltd. to Troms Offshore regarding the vessel SICAL-TORINO for January 2008. Affidavit of Michael J. Frevola in Support of Troms Offshore AS' Motion to Dismiss dated February 29, 2008 ("Frevola MTD Aff."), ¶ 4.   The vessel SICAL-TORINO is owned by Sical Bergen Logistics PTY Ltd. and is managed by Troms Offshore.   Hoel Aff., ¶ 32.   Neither Troms Offshore nor North Offshore have any ownership interest in the SICAL-TORINO or Sical Bergen Logistics PTY Ltd.   *Id.*   The payment intercepted was originated from Sical Bergen Logistics PTY Ltd. to fund the January 2008 operational expenses of the vessel SICAL-TORINO.   *Id.*;

- $38.26 attached on January 16, 2008 while being wired transferred from Troms Offshore to a Belgian entity named Marlink.  Frevola MTD Aff., ¶ 5.   Neither Troms Offshore nor North Offshore have any ownership interest in Marlink.  Hoel Aff., ¶ 33.   The payment intercepted was a payment that Troms Offshore had made as the manager of the vessel SICAL-TORINO to satisfy that vessel's communications expenses.   *Id.*;

- $15,208.18 attached on January 22, 2008 while being wired transferred from Polish Manning Services Spolka to Troms Offshore regarding the vessel VIGEO OLUFUNKE as a final balance for December 2007.   Frevola MTD Aff., ¶ 6.   The VIGEO OLUFUNKE is owned by Vigeo Ltd. and managed by Troms Offshore.  Hoel Aff., ¶ 34. Neither Troms Offshore nor North Offshore have any ownership interest in the VIGEO OLUFUNKE or Polish Manning Services Spolka.   *Id.*   The payment intercepted was payment of the final balance of crew payments for the crew of the VIGEO OLUFUNKE for December 2007.   *Id.*;

- $290,631.00 attached on February 27, 2008 while being wired transferred from NIBC Bank Ltd. to Troms Offshore regarding the vessel SICAL-TORINO for February 2008. Frevola MTD Aff., ¶ 7. The payment intercepted was originated from Sical Bergen Logistics PTY Ltd. to fund the February 2008 operational expenses of the vessel SICAL-TORINO. Hoel Aff., ¶ 35.

Similar to the Vessel under charter to North Offshore, Troms Offshore manages the vessels SICAL-TORINO and VIGEO OLUFUNKE for their owners or charters. *Id.* ¶ 36. None of the $596,508.44 under attachment was being sent for or received on behalf of North Offshore. *Id.*

## ARGUMENT

A complaint may be dismissed pursuant to Federal Rule 12(b)(6) where it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, ___, 127 S. Ct. 1955, 1974 (2007). As the Second Circuit has recently instructed, *Twombly* requires a party bringing a claim satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007) (interpreting *Twombly*) (emphasis in original). A party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, ___ U.S. at ___, 127 S. Ct. at 1959 (internal quotation marks and alteration omitted); *see also Arista Records, LLC v. Lime Group LLC*, No. 06 Civ. 5936 (GEL), 2007 WL 4267190, at *4 (S.D.N.Y. Dec. 3, 2007). As this Court recently held:

> Pursuant to this "flexible 'plausibility standard,'". . . a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" . . . . A plaintiff, therefore, need not provide a "heightened fact pleading of specifics" to avoid dismissal, but, if it "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed."

*S.E.C. v. Lyon*, No. 06 Civ. 14338 (SHS), ___ F. Supp. 2d. ___, 2008 WL 53102, at *3 (S.D.N.Y. Jan. 2, 2008) (Stein, J.) (internal citations to *Twombly* and *Iqbal* omitted).

In considering a motion to dismiss, the Court must presume all factual allegations of the complaint to be true and must draw any reasonable inferences in favor of the non-moving party. *See, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993) (holding that a court must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader.") (citation omitted). Although the Court must draw all inferences in favor of the pleader, dismissal pursuant to Federal Rule 12(b)(6) is appropriate "where the plaintiff cannot recover on the facts . . . alleged." *Mills*, 12 F.3d at 1174. In conducting the motion to dismiss inquiry, conclusory statements cannot "substitute for minimally sufficient factual allegations." *Paycom Billing Servs. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 289 (2d Cir. 2006) (internal citation omitted); *see also Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 343 (2d Cir. 2006) (noting that "bald assertions and conclusions of law will not suffice" to defeat motion to dismiss) (internal citation omitted). "To survive dismissal, the plaintiff must provide the grounds upon which [her] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, ___ U.S. at ___, 127 S. Ct. at 1965).

## POINT I

### RBD'S VERIFIED COMPLAINT DOES NOT ASSERT A LEGALLY COGNIZABLE CLAIM AGAINST TROMS OFFSHORE AS IT COMPLETELY FAILS TO ALLEGE ANY FACTS TO SUPPORT ITS ALTER EGO CLAIM UNDER FEDERAL COMMON LAW

In its complaint, it appears that RBD is trying to establish liability against Troms Offshore by first attempting to pierce the corporate veil of North Offshore. Plaintiff, however, fails to properly allege extraordinary circumstances that would support a cause of action for piercing the corporate veil. "Veil-piercing is the 'rare exception,' applied only in exceptional circumstances." *Scheidemann v. Qatar Football, Ass'n*, No. 04 Civ. 3432 (LAP), 2008 WL 144846, at *5 (S.D.N.Y. Jan. 15, 2008) (citing *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003)). "Under the doctrine of limited liability, a corporate entity is liable for the acts of a separate related entity only under extraordinary circumstances, commonly referred to as piercing the corporate veil." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996) (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 & n.2 (10th Cir. 1993); *see also Dolco Inv., Ltd. v. Moonriver Dev., Ltd.*, 486 F. Supp. 2d 261, 271 (S.D.N.Y. 2007) (quoting *Murray*).

Federal common law governs the issue of piercing the corporate view in admiralty actions, and, thus whether RBD has stated a claim against Troms Offshore. *See, e.g., Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 342 (2d Cir. 1986) (citations omitted); *Dolco*, 486 F. Supp. 2d at 271 (citation omitted). Under federal common law, piercing the corporate veil is appropriate in two circumstances:

> The individual [or corporate parent] must have used the corporate entity to "perpetrate a fraud or have so dominated and disregarded" the corporate entity's form that the entity "primarily transacted [the individual's] [or parent's] personal business rather than its own corporate business."

- 10 -

*Rascator Mar.*, 782 F.2d at 342 (citations omitted); *see also Dolco*, 486 F. Supp. 2d at 271.

Thus, there are two distinct theories under which a maritime plaintiff may pierce the corporate

veil; fraud and alter ego. *See Dolco*, 486 F. Supp. 2d at 271 (citations omitted).

When not based in fraud, "veil-piercing claims are generally subject to the pleading

requirements imposed by Fed. R. Civ. P. 8(a), which requires only 'a short and plain statement of

the claim showing that the pleader is entitled to relief.'" *Id.* at 272 (quoting *EED Holdings v.

Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (citation omitted)).

Suits in admiralty, however, also are subject to Fed. R. Civ. P. Supp. Rule E(2)(a), which

provides:

> In actions to which this rule is applicable the complaint shall state the
> circumstances from which the claim arises with such particularity that the
> defendant or claimant will be able, without moving for a more definite statement,
> to commence an investigation of the facts and to frame a responsive pleading.

Fed. R. Civ. P. Supp. Rule E(2)(a); *see, e.g., Dolco*, 486 F. Supp. 2d at 272.

"This heightened pleading standard is not some pettifogging technicality meant to trap

the unwary, but, rather, a legal rule designed to counterbalance the unique and drastic remedies

that are available in *in rem* admiralty proceedings." *P.R. Ports Auth. v. BARGE KATY-B*, 427

F.3d 93, 105 (1st Cir. 2005) (noting that "[o]rdinary notice pleading does not satisfy the

stringencies of [the supplemental] rules"); *accord Dolco*, 486 F. Supp. 2d at 272.

In this case, Plaintiff RBD has not alleged fraud.[2] Aside from fraud, a plaintiff can pierce

a corporate veil by showing that a person or corporation exercises dominion and control over the

alter ego. *See Dolco*, 486 F. Supp. 2d at 271 (citation omitted). The Second Circuit has

identified a number of factors that are relevant in evaluating alter ego claims:

---

[2]    Allegations of fraud must be plead with specificity under Fed. R. Civ. P. 9(b).

(1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities.

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (quoting *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997);[3] *see also Dolco*, 486 F. Supp. 2d at 271-72 (applying these factors in the admiralty context); *Wajilam Exports Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 284-85 (S.D.N.Y. 2006) (same); *In re Holborn Oil Trading Ltd.*, 774 F. Supp. 840, 844-45 (S.D.N.Y. 1991) (same).

RBD has not made any factual allegations that any of the above-listed hallmarks of corporate formalities or record-keeping were in fact disregarded. The bald conclusions of *law* that Plaintiff recites regarding Troms Offshore are insufficient to state a claim of alter ego. To survive a motion to dismiss, RBD must allege sufficient *facts* to make plausible the allegations that North Offshore has so dominated and disregarded Troms Offshore's form, such that North Offshore, rather than Troms Offshore, conducted Trom Offshore's business. *See Dolco*, 486 F. Supp. 2d at 272; *Wajilam*, 475 F. Supp. 2d at 282. RBD fails to meet this burden because it has not included any factual allegations that North Offshore exercised complete domination over Troms Offshore.

First, and most obviously, RBD does not even include the phrase "alter ego" in its complaint. Chief Judge Kimba M. Wood found this to be an important factor in the *Tide Line*

---

[3]    This factor analysis is virtually the identical to the 15 factor analysis for piercing the corporate veil in admiralty enumerated by Magistrate Judge Smith in *Bergesen, d.y. A/S v. Magnus Lindholm*, 760 F. Supp. 976, 987 (D. Conn. 1991); *see also In re Holborn Oil Trading Ltd.*, 774 F. Supp. 840, 845 n. 5 (S.D.N.Y. 1991).

case in which the court vacated an attachment that was based on overly general alter ego allegations. *Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06 Civ. 1979 (KMW), 2006 WL 4459297, 2007 A.M.C. 252, 268 (S.D.N.Y. Aug. 15, 2006). Specifically, Judge Wood found that mere allegations that entity B was the "paying agent" for entity A, and the entity B had arranged for other non-parties to pay the debts of entity A, was insufficient to state an alter ego claim. *Tide Line*, 2007 A.M.C. at 268-69.

Furthermore, while Judge Wood acknowledged that "a court may find that where 'alter ego' 'is not specifically pled, the factual allegations [in a complaint] may support the maintenance of a claim based on an alter ego theory of liability,'" *id.* at 268 (citing *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 899 (S.D.N.Y. 1999)), RBD utterly has failed to plead sufficient facts to state a claim of alter ego. Some examples of the generalizations and broad, conclusory allegations from the complaint are illustrative.

In paragraphs 16-18 of the Verified Complaint, RBD makes its bare-bones alter ego allegations. RBD asserts Troms Offshore is a shell corporation acting as a "paying agent" or "pass through" entity for North Offshore so as to insulate itself from charterers. Verified Complaint, ¶¶ 16-18. As Judge Wood opined in *Tide Line*, these allegations do not suffice to establish a properly pled alter ego claim, especially under "the more particularized pleading standard set forth in Supplemental Rule E(2)(a)." *Tide Line*, 2007 A.M.C. at 269.

The Vikøren Declaration contains only one paragraph addressing Trom Offshore's allegations in the form of a hypothetical consisting of purely speculative allegations with no factual foundation. *See* Harwood Aff., Ex. E, ¶ 13. But the Hoel Affirmation counters these speculative allegations as to "siphoning" of funds with specific documentary proof that ***all hire payments made to the ALDOMA's owner AMNGR were made by North Offshore*** ranging back

to the commencement of the present charter of the ALDOMA. Hoel Aff., ¶¶ 26-27, Exs. 6 & 7. These concrete facts conclusively rebut RBD's speculation as to Troms Offshore's actions alleged in order to try to manufacture an alter ego claim.

RBD resorts to allegations made "upon information and belief" to claim that "Defendant [Troms Offshore] is a shell corporation through which [North Offshore] conducts the charter business of the vessel." Verified Complaint, ¶ 16. But RBD's own exhibits in the Harwood Affidavit belie this premise. They show that Troms Offshore manages a total of 14 vessels, two which are bareboat chartered by North Offshore. The remaining 12 vessels managed by Troms Offshore are owned by a variety of owners. None of these 12 vessels are owned by, or have been chartered by, North Offshore. Simply put, RBD alleges corporate improprieties without affirmative proof, but also while having submitted contrary evidence suggesting that Troms Offshore is managing an extensive fleet of vessels at arms length from their owners. The Hoel Affirmation merely buttresses information already submitted by RBD.

Furthermore, not only do the alter ego allegations made "upon information and belief" bear close inspection, but also they should be legally disregarded. "Information and belief," allegations require the pleading of actual facts such that a court can credit a plaintiff's assurance that it indeed possesses proof of what it claims is true. 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1215, at 194 (3d ed. 2004 & Supp. 2006) (analyzing Rule 8 jurisprudence and concluding that a plaintiff's well-plead allegations will be taken as true if they contain a sufficient statement of "circumstances, occurrences, and events" in support of their claim; "Rule 8(a)(2) does require that the pleader disclose adequate information concerning the basis of his claim."); *see also Brave Bulk Transp. Ltd. v. Spot On Shipping Ltd.*, No. 07 Civ. 4546 (CM), 2007 WL 3255823, at *6 (S.D.N.Y. Oct. 30, 2007) (hereafter "*Brave Bulk II*").

In the *Brave Bulk* proceedings, Judge McMahon discussed this "information and belief" pleading issue in Rule B proceedings in some depth. The court held that a Rule B attachment should be vacated "in the absence of a showing of ***at least some specific facts demonstrating the type of corporate domination and control sufficient to pierce the corporate veil.***" *Brave Bulk Transport, Ltd. v. Spot on Shipping, Ltd.*, No. 07 Civ. 4546, 2007 WL 2734291 at *1 (S.D.N.Y. Sept. 17, 2007) (emphasis added) (hereafter "*Brave Bulk I*"). The allegations made in *Brave Bulk I* that Judge McMahon found to be insufficient to sustain the plaintiff's alter ego claim ***were made "upon information and belief" and were quite similar to those made here by RBD***:

> First, on the record before this court, ZSL [the purported alter ego] is not an alter ego of [the primary defendant] Spot On. The verified complaint alleges that ZSL hsa [*sic*] no separate or independent identity from Spot On, that the two corporations use their names interchangeably with a design to fraudulently avoid payment of just debts. Alternatively, it alleges that ZSL is merely a shell corporation through which Spot On conducts business. Alternatively, it alleges that ZSL and Spot On are partner and/or joint venturers. And alternatively it alleges that the two companies are affiliated. ***All these allegations are made on information and belief.***
>
> In moving to dismiss, ZSL has provided a declaration from one Zhang Jinlu, a director and shareholder of ZSL, who avers that there is no connection whatever between ZSL and Spot On and that ZSL is in fact the captive shipper for Zhangdian Iron Steel Works, which is owned by the Chinese Government. No contrary evidence having been presented, I conclude that there is no basis for the "information and belief" allegations contained in the verified amended complaint concerning any relationship between ZSL and Spot On. ***Since a Rule B attachment on an alleged alter ego's property cannot be sustained in the absence of a showing of at least some specific facts demonstrating the type of corporate domination and control sufficient to pierce the corporate veil***, *See Dolco Investments, Ltd. v. Moon River Development, Ltd.* 2006 U.S. Dist. LEXIS 31101 (S.D.N.Y. April 26, 2007), ***I must lift the attachment as against ZSL on that basis alone***.

*Brave Bulk I*, 2007 WL 2734291, at *1 (emphasis added).

In *Brave Bulk II*, on a motion to reconsider its decision to vacate the attachment and to dismiss the complaint against the purported alter ego, the court declined to change its ruling. In doing so, Judge McMahon explained that the "information and belief" allegations in the complaint were wholly conclusory allegations, and therefore, insufficient to support an alter ego claim. *Brave Bulk II*, 2007 WL 3255823, at *6. Significantly with regard to the case at bar, Judge McMahon held that the plaintiff – while having introduced enough additional information in opposition to the defendant's motion to vacate to forestall being sanctioned and to allow plaintiff to amend its complaint – ___would not be permitted to keep the funds of the defendant___ ___already attached___ *as the attachments were made on a complaint that lacked the necessary allegations of a prima facie admiralty claim*. *Id.* The court explained that:

> The wholly conclusory allegations in the Amended Complaint are, upon reflection, simply insufficient. Were a plaintiff to be permitted to rely on such allegations to obtain an attachment against an entity that is not a party to a contract sued on, *the already thinly stretched remedy of maritime attachment could disrupt the commercial activities of entities whose links to the real defendant in interest are tenuous of [sic] non-existent*.

*Id.* (emphasis added). The Court also stated that "[b]y including specific factual allegations that support 'on information and belief['] contentions in the complaint, the plaintiff's counsel subjects himself to Rule 11 sanctions should they prove erroneous. That is, it seems, a salutory result." *Id.*

Here, RBD's allegations against Troms Offshore are no more substantial than those made by Brave Bulk against the purported alter ego ZSL in *Brave Bulk I* and *Brave Bulk II*. In order to support its allegations based "upon information and belief," one would expect RBD to have pled facts demonstrating that Troms Offshore made or accepted payments on behalf of North Offshore in connection with the Vessel or that Troms Offshore communicated with North Offshore's charterers on behalf of North Offshore. *See, e.g., Fesco Ocean Mgmt., Ltd. v. High*

*Seas Shipping Ltd.*, No. 06 Civ. 1055 (NRB), 2007 WL766115, at *3 (S.D.N.Y. Mar. 12, 2007) (noting the type of relevant proof under an alter ego reasonable grounds analysis). Yet, both the Verified Complaint and the Vikøren Declaration are bereft of any mention of Troms Offshore's involvement in such activities, or any fact that would support these allegations (much less documentary or other types of evidence to support such speculative allegations).

Indeed, as RBD was the previous charterer of the Vessel managed by Troms Offshore and ***RBD had it under charter for three years*** (from February 2004 to May 2007), it would be expected that RBD would have at least a few examples of North Offshore's domination of Troms Offshore. Tellingly, RBD has provided no such support for its "upon information and belief" allegations. For example, if such circumstances existed, RBD could have recited instances where it paid Troms Offshore directly for charter hire owed to North Offshore. But RBD has not alleged this. Furthermore, the Hoel Affirmation unequivocally confirms that Troms Offshore neither received hire payments on behalf of North Offshore nor paid hire payments on behalf of North Offshore, and exhibits supporting these statements have been submitted as well. Hoel Aff., ¶¶ 27, 29, Exs. 6 & 7.

Furthermore, neither the Time Charter nor the side agreement, the documents referenced in the Verified Complaint, ever mention Troms Offshore. Instead, RBD's Troms Offshore's only connection to the Vessel is a reference on its website that it is presently operating the Vessel. Verified Complaint, ¶ 14. But Trom Offshore's website also states that Troms Offshore manages fifteen other vessels as well. Harwood Aff., Ex. E, Ex. 8. As explained by the Hoel Affirmation, Troms Offshore provides management services for a variety of foreign shipowners and the Norwegian government as well. Hoel Aff., ¶ 28. Finally, the very funds attached by RBD in this proceeding supports Troms Offshore's position that it is an arms length ship manager for a

variety of ship owners.  The three large payments attached by RBD thus far are for ships managed by Troms Offshore for other shipowners who have no connection with North Offshore, but nevertheless their funds have been frozen.  *Id.* ¶¶ 32, 34-36.

These facts show that a readily explainable alternative reason exists for Troms Offshore's interactions with North Offshore (namely acting as vessel manager for two of North Offshore's vessels in a total fleet of 14 vessels), which explanation defeats the bare assertions of wrongdoing made by RBD.  *See, e.g., In re Elevator Antitrust Litigation*, 502 F.3d 47, 51 (2d Cir. 2007) (citing *Twombley* for proposition that activity readily explainable as normal business conduct cannot suffice to create plausible claim under *Twombley*); *Farbstein v. Hicksville Public Library*, No. 06-0907-cv, 2007 WL 3407434, at * 1 (2d Cir. Nov. 15, 2007) (holding that the plaintiffs "bare allegation of conspiracy supported only by an allegation of conduct that is readily explained as individual action" [wa]s insufficient to defeat the [defendant]'s motion to dismiss) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 177 (2d Cir. 2007); citing *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999)).

Here, RBD should not be permitted to attach the funds earned in connection with work for numerous other vessels based on sweeping allegations devoid of fact.  Even if RBD's allegations are taken as true, they hardly support the kind of "complete domination" necessary to pierce the corporate veil.

RBD and its counsel should face the same circumstances as created by Judge McMahon in *Brave Bulk II*.  The Order of Attachment should be vacated and the attached funds released.  If RBD is able to allege "specific factual allegations" in support of its alter-ego claim, it can do so in a timely manner.  It is highly unlikely RBD will be able to do so based on the record in this case.  But if it tries, at least Troms Offshore could then seek sanctions from RBD and its counsel

when it is shown that no good faith belief exists for the alter-ego claim. Presently, the Order of Attachment with respect to Troms Offshore should be vacated and the attached monies released.

**POINT II**

**NOT ONLY DOES RBD'S CLAIM AGAINST TROMS OFFSHORE FAIL UNDER U.S. LAW, BUT ALSO *LAURITZEN* AND ITS PROGENY MANDATE ANALYSIS OF RBD'S CLAIMS UNDER NORWEGIAN LAW**

Federal maritime choice-of-law principles will govern any choice-of-law inquiry undertaken. *See, e.g., Romero v. Int'l Terminal Operating Co.,* 358 U.S. 354, 382 (1959). The principles relevant for federal maritime choice-of-law analysis are governed by the trilogy of Supreme Court decisions in *Lauritzen v. Larsen*, 345 U.S. 571 (1953), *Romero*, and *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306 (1970).

The *Lauritzen* Court enumerated seven factors that bear on this choice of law question: (1) the law of the flag; (2) the place of the wrongful act; (3) the place of contract; (4) the allegiance or domicile of the injured; (5) the allegiance of the defendant shipowner; (6) the inaccessibility of the foreign forum; and (7) the law of the forum. *See Lauritzen*, 345 U.S. at 583-90. The *Rhoditis* decision added the shipowner's base of operations as another factor of importance. *See Rhoditis*, 398 U.S. at 309.

Dubbed "the most venerable and universal rule of maritime law" by Justice Jackson in *Lauritzen, id.* at 584, the law of the flag plays a critical and determinative part in the choice-of-law analysis. The *Lauritzen* Court appreciated that an oceangoing vessel, by its very nature, causes choice-of-law dilemmas that must be resolved with due regard to uniformity of international law as well as to the laws of the respective sovereigns through whose waters that vessel navigates. *Id.* at 581-82. The result that international maritime law has reached in regard to oceangoing vessels, especially in regard to the affairs aboard ship – as opposed to acts of crew

- 19 -

members ashore (*e.g.*, criminal infractions) or those that somehow affect the local sovereign (*e.g.*, navigational or environmental regulations) – is that the law of the vessel's flag provides a uniform, predictable basis for resolving issues arising concerning matters internal to the vessel.

As venerable as the law of the flag is in maritime law, there are strong arguments to be made against its application. *Carbotrade S.P.A. v. Bureau Veritas*, 99 F.3d 86 (2d Cir. 1996), is particularly significant, because it minimizes the importance of the vessel's flag where the shipowner is not a party, as here.

> ***Whatever significance law of the flag may have in cases where the ship or its owner is a party*** and where other factors fail to point clearly to another jurisdiction's law, ***we see no reason to apply the law of the flag here in preference to that of another jurisdiction*** whose ties are more pertinent to the dispute, ***especially given the fact that neither the ship nor the owner is a party***.

*Carbotrade*, 99 F.3d at 92-93 (emphasis added).

Here, the law of the ship's flag is the Bahamas, and the Shipowner AMNGR is a Russian company. Furthermore, this case involves a dispute arising under a side letter to the Time Charter and does not concern the internal working of the ship. Indeed, the claims against Troms Offshore, which are those being assessed in this motion, are even more attenuated, because they allege that Troms Offshore's business practices ashore open it up to alter ego liability.

In this case, all of the other factors point towards application of the law of Norway. First, RBD introduced a declaration from a Norwegian lawyer – Olav Vikøren – to introduce certain aspects of Norwegian law. *See* Harwood Aff., Ex. 5. Second, all parties to this action are Norwegian corporations organized and existing under the laws of Norway. Verified Complaint, ¶¶ 2, 3, 5. Third, the place of the alleged wrongful acts – North Offshore's domination of Troms Offshore, Troms Offshore's alleged banking practices, etc. – is Norway. Fourth, the dispute arises in connection to the side letter of the Time Charter, all signed in Norway. The underlying

claims have been filed in the Nord-Troms County Court in Norway, pursuant to "writ" dated November 7, 2007. Verified Complaint, ¶ 10.

Further, the foreign forum is readily accessible. The claim in this action has been filed in the courts of Norway. And two arbitration proceedings between RBD and North Offshore have already been held in Norway, with two separate awards being made to North Offshore. As discussed in the next section, the law of Norway strictly limits the availability of alter ego and veil-piercing liability. Scheel Aff., ¶¶ 6-7. Indeed, Plaintiff's failure to file alter ego claims against Troms Offshore in Norway is telling: under Norwegian law, RBD's claims against Troms Offshore would be dismissed promptly and RBD would be required to pay Troms Offshore's legal costs. *Id.* ¶¶ 91-10.

Accordingly, RBD's claims against Troms Offshore must fail, because it cannot meet the standards to state a claim of alter ego under U.S. law, and it certainly cannot meet the elevated standards necessary to state such a claim under Norwegian law.

## POINT III

### RBD'S ALLEGATIONS AGAINST TROMS OFFSHORE DO NOT ASSERT A LEGALLY COGNIZABLE CLAIM BECAUSE THEY COMPLETELY FAIL TO PROPERLY ALLEGE ANY FACTS TO SUPPORT ITS ALTER EGO CLAIM UNDER NORWEGIAN LAW

Under Norwegian law, Plaintiff RBD could not recover against Troms Offshore under any theory based on the allegations set forth in RBD's Verified Complaint. Scheel Aff., ¶¶ 10-11. In Norway, there are only limited circumstances in which a Plaintiff may impute liability of a principal defendant against another through theories of piercing the corporate veil or alter ego. *Id.* ¶ 6.

In the accompanying affirmation, Greorg Scheel, a Norwegian attorney for thirty years, and Managing Director of Nordisk Skibsrederforening (the "Northern Shipowners' Defense

Club"), emphasizes that he is "not aware of any Norwegian case where a subsidiary company has been held liable for debts incurred by a parent company." *Id.* ¶ 7. The limited circumstances in which a claim to pierce the corporate veil might succeed under Norwegian law is if a number of the following circumstances are present:

- in circumstances where a company does not run a separate business; i.e. to the effect that the company does not have separate accounts, assets and/or is properly registered at the Norwegian Registry of Business Enterprises;

- where the Board of Directors do not hold Board meetings separate from the Board meetings of another entity;

- where the company does not hold an annual general meeting separate from annual general meetings of other entities;

- where the owners themselves do not treat the company in question as a separate entity; and

- where the company does not have its own business clients.

*Id.*

Furthermore, Plaintiff RBD has commenced an action against Defendant North Offshore in Norway based on the side letter, as alleged in the Verified Complaint in paragraphs 10 and 11. RBD, however, does not mention that it has not commenced claims in Norway against Troms Offshore. *Id.* ¶ 10. Most likely, this is because a similar claim brought by RBD in a Norweigian court would result in RBD's claim against Troms Offshore being dismissed with an award of attorney's fees and expenses to the opposing party. *Id.* Under Norwegian law, RBD's bare allegations would certainly not establish liability against Troms Offshore, and therefore, the complaint should be dismissed as a matter of law.

## CONCLUSION

Because Plaintiff Rolv Berg Drive's claims against Troms Offshore fail to satisfy the plausibility standard required under *Twombley* and the heightened pleading standard for admiralty claims under Supplemental Rule E(2)(a), regardless of whether those claims are examined under U.S. substantive law or Norwegian substantive law, Defendant Troms Offshore respectfully requests that the Court grant its motion to dismiss Plaintiff Rolv Berg Drive's claims against Troms Offshore, along with such other and further relief as this Court deems fair and just.

Dated: New York, New York
　　　February 29, 2008

Respectfully Submitted,

HOLLAND & KNIGHT LLP

By: _____

Michael J. Frevola
Christopher R. Nolan
195 Broadway
New York, New York 10007
(212) 513-3200

*Attorneys for Defendants*

# 5113548_v1