Michael J. Frevola
Christopher R. Nolan
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR DEFENDANTS
NORTH OFFSHORE AS and TROMS OFFSHORE AS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ROLV BERG DRIVE AS,<br><br>　　　　　　　Plaintiff,<br><br>　　　-against-<br><br>NORTH OFFSHORE AS and TROMS OFFSHORE AS,<br><br>　　　　　　　Defendants. | 07 Civ. 11502 (SHS)<br><br>**AFFIRMATION OF<br>GEORG SCHEEL<br>PURSUANT TO 28 U.S.C. § 1746** |

I, Georg Scheel, declare under penalty of perjury, that the following is true and correct:

1.　I am an attorney with Nordisk Legal Services, the litigation department of Nordisk Skibsrederforening (the "Northern Shipowners' Defense Club"), of which I am also the Managing Director. I graduated in law at the University of Oslo in 1974. I was engaged as an assistant professor at the Scandinavian Institute of Maritime Law in Oslo from 1973 until 1975, when I joined the Office of the Attorney General of Norway. I was admitted to the Bar of the Supreme Court of Norway in 1977. I am experienced as an advocate handling litigation in the Norwegian Courts and arbitration before arbitration panels in Oslo, London and New York.

2. I am familiar with the circumstances surrounding this dispute in the Norwegian arbitration and Norwegian lawsuit presently pending between North Offshore AS ("North Offshore") and Rolv Berg Drive AS ("RBD") concerning the claims at issue in this proceeding and the related proceeding pending before this Court entitled *North Offshore AS v. Rolv Berg Drive AS*, Civ. No. 07 CV 3095 (SHS). In this proceeding, I understand that Plaintiff RBD claims against both Defendant North Offshore and Defendant Troms Offshore AS ("Troms Offshore") for a purported breach of a "side letter agreement" dated March 5, 2004 (the "Side Letter"), on which Side Letter Troms Offshore neither is named nor is a signatory.

3. I submit this Affirmation in support of the motion by Defendant Troms Offshore to dismiss RBD's claims against Troms Offshore on grounds that RBD fails to state a claim against Troms Offshore upon which this Court may grant RBD relief.

4. I have reviewed the Verified Complaint filed by RBD dated December 21, 2007, which names Troms Offshore as a defendant. That Verified Complaint contains, in total, the following allegations regarding Troms Offshore:

- "Defendant [North Offshore AS] is the 100% owner of the shares of three subsidiaries [including Troms Offshore]." Verified Complaint, ¶ 3.

- "[Troms Offshore] is also a Norwegian company and 100% owned by [North Offshore AS]." Verified Complaint, ¶ 5.

- "[Troms Offshore]'s website pages records [*sic*] that [Troms Offshore] is presently 'operating' the Vessel, under charter form [*sic*] her Russian owners." Verified Complaint, ¶ 14.

- "Upon information and belief, Defendant [Troms Offshore] is a shell corporation through which [North Offshore] conducts the charter business of the Vessel." Verified Complaint, ¶ 16.

- Upon information and belief, Defendant [Troms Offshore] acts as paying agent or receiving agent for hire and sub-hire payments for the Vessel or arranges for non-parties to satisfy the debts and obligations of Defendant [North Offshore] and/or receive payments being made to defendant [North Offshore]." Verified Complaint, ¶ 17.

- Upon information and belief, Defendant [North Offshore] uses Defendant [Troms Offshore] as a 'pass through' entity in order to insulate itself from charters relating to its commercial obligations." Verified Complaint, ¶ 18.

- Hire payments being collected by [Troms Offshore] and paid to [the Vessel's owner] as operator belong to [North Offshore]." Verified Complaint, ¶ 20.

5. For the purposes of this opinion, I have been asked to assume *arguendo* that the foregoing allegations made by Plaintiff RBD can be proven. I have also been asked to provide my opinion, under Norwegian law, whether these allegations, if proven, would result in Troms Offshore being found liable for North Offshore AS's actions in any manner, including but not limited to theories of corporate veil-piercing or alter ego liability. For the reasons set forth below, Plaintiff RBD, under Norwegian law, could not recover against Troms Offshore under any theory based on the allegations set forth in RBD's Verified Complaint.

6. Under Norwegian law, there are very limited instances in which a plaintiff may impute liability of a principal defendant against another party through theories such as

3

piercing the corporate veil or alter ego. As an example, I would refer to a decision handed down by the Norwegian Supreme court in 1994 (made publicly available in Rt. 1994 page 1002, and attached hereto as Appendix I). In that case, an individual who was the sole shareholder of the company as well as the Chairman of the Board and the President of the company was prosecuted for embezzlement against the company, based on the fact that he had emptied the company of assets. The relevant section of the Norwegian Criminal Code directs itself against persons who neglect "another person's" (whether being an individual or a legal person) affairs or business which he is administering or supervising. The defendant submitted that the company could not be regarded as "another person", since he himself was the owner of all the shares and was also running the company. In the Norwegian Supreme Court there was consensus that this defense could not succeed. Two of the judges limited themselves to citing a precedent – Rt. 1993 page 513, according to which the Supreme Court found that a choice of business organization had to be respected, and that the real owners (the shareholders) were not at liberty to disregard the corporate structure (at page 518). The three other judges stated that the conclusion reached was supported by good reasons:

> "The supreme court has in other circumstances also found that when a business person chooses to organize his activities using the corporate form, then the company will be considered an independent legal activity, and the company's assets will be considered separate assets which the shareholders cannot dispose of for their own purposes other than as provided for by the law. I believe it will lead to the best systematic result also in relation to the Criminal Code provisions protecting the assets of third parties if one considers the company distinct from it's shareholders."

7.  I would like to emphasize that I am not aware of any Norwegian case where a subsidiary company has been held liable for debts incurred by a parent company. The limited circumstances in which a claim based on piercing the corporate veil could succeed under Norwegian law is if a number of the following circumstances are present:

- in circumstances where a company does not run a separate business, i.e. to the effect that the company does not have separate accounts, assets and/or is properly registered at the Norwegian Registry of Business Enterprises;

- where the Board of Directors do not hold Board meetings separate from the Board meetings of another entity;

- where the company does not hold an annual general meeting separate from annual general meetings of other entities;

- where the owners themselves do not treat the company in question as a separate entity;

- where the company does not have its own business clients.

8.  As Plaintiff RBD relates in the Verified Complaint at paragraphs 10 and 11, RBD has commenced a claim against Defendant North Offshore in Norway based on the Side Letter. RBD, however, fail to state that RBD has not commenced claims in Norway against Troms Offshore.

9.  Under Norwegian procedural law, a party is entitled to its attorneys' fees and expenses against its opponent if that party prevails against the opponent.

10. In my opinion, based on the allegations made by RBD in the Verified Complaint, a similar claim brought by RBD in the Norwegian court system would result in

RBD's claim against Troms Offshore being dismissed with the court awarding attorneys' fees and expenses to Troms Offshore.

11.   For the reasons set forth above, I am confident in my opinion, that, under Norwegian law, Plaintiff RBD could not establish liability against Defendant Troms Offshore based on a theory of corporate veil-piercing or alter ego.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of February, 2008 in Oslo, Norway.

_____
Georg Scheel

# APPENDIX I
# SCHEEL AFFIRMATION

# HR-1994-00096 - Rt-1994-1002 (316-94)

| | |
|---|---|
| INSTANS: | Høyesterett - Dom. |
| DATO: | 1994-08-30 |
| PUBLISERT: | HR-1994-00096 - Rt-1994-1002 (316-94) |
| STIKKORD: | Økonomisk utroskap m.v. Lovanvendelse. Straffutmåling. |
| SAMMENDRAG: | 59-årig, tidligere ustraffet mann ble idømt åtte måneder fengsel hvorav 45 dager ubetinget, for overtredelse av straffeloven §276, jfr. §275, og §276, første ledd jfr. annet ledd og overtredelse av andre bestemmelser. Utroskap var skjedd i forhold til et aksjeselskap hvor han selv eide alle aksjene og var styreformann og daglig leder. Han hadde ved kontantuttak og ved å ha belastet selskapet for privatutgifter tilegnet seg til sammen kr. 257.000,- av selskapets midler. Spørsmål om forholdet kunne anses for underslag. Særbemerkninger fra to dommere. |
| SAKSGANG: | Høyesterett HR-1994-00096 B, snr 59/1994. |
| PARTER: | Påtalemyndigheten (Aktor: statsadvokat Harald Strand) mot A (Forsvarer: advokat Ole Jakob Bae). |
| FORFATTER: | Bugge, Halvorsen, Aarbakke - Mindretall: Gussgard, Skåre. |

Nedre Romerike herredsrett avsa 29 november 1993 dom med denne domsslutning:

"1. A, f. *.*.35, dømmes for overtredelse av straffeloven §276, jfr. §275, straffeloven §275 første ledd, jfr. annet ledd, straffeloven §286, 2. straffalternativ, jfr. §288, straffeloven §183, straffeloven §182, ligningsloven §12-1 nr. 1, merverdiavgiftsloven §72 nr. 2 annet ledd, jfr. første ledd, jfr. nr. 3, alt sammenholdt med straffeloven §62, til en straff av fengsel i åtte - 8 - måneder hvorav nitti - 90 - dager gjøres ubetinget og resten betinget med en prøvetid på to - 2 - år, jfr. straffeloven §52.

2. A frifinnes for tiltalens post VIIa."

Saksforholdet og domfeltes personlige forhold fremgår av domsgrunnene.

Dommen er påanket av domfelte. Anken gjelder lovanvendelsen for så vidt han er dømt for utroskap, straffeloven §275, og dessuten straffutmålingen, som hevdes å være for streng. Jeg behandler lovanvendelsesanken først.

Herredsretten har lagt til grunn at domfelte i august 1988 stiftet et aksjeselskap, X A/S, med en aksjekapital på kr 51000. Alle aksjene eides av domfelte, som var selskapets styreformann og daglige leder. Virksomheten var mottak av fyllmasse fra forskjellige anleggsplasser og

**Side 1003**

levering av massene til et gårdsbruk for planering. Virksomheten opphørte i det vesentlige i september 1989. I oktober 1991 ble selskapet slått konkurs. Bobehandlingen måtte innstilles etter konkursloven §135.

Domfelte er overensstemmende med tiltalens post I og II blitt kjent skyldig i utroskap ved å ha tilegnet seg ved kontantuttak og ved å belaste selskapet for privatutgifter, til sammen ca kr 257000 av selskapets midler. To av enkeltforholdene er henført under §276 som grov utroskap. Herredsretten har i domsgrunnene tatt opp til vurdering spørsmålet om tiltalte kunne dømmes for utroskap når han selv var eier av alle aksjene i X A/S. Retten har under henvisning til Rt-1993-513 funnet at utroskapsbestemmelsen kan anvendes også i et slikt tilfelle.

Domfelte angriper rettsanvendelsen på dette punkt og anfører i ankeerklæringen:

"Utroskap etter straffeloven §275 forutsetter at den skyldige handler mot prinsipalens tarv. A var styreformann, daglig leder og eneeier av aksjene i X A/S. Det er således ikke tale om andre medeiere

i selskapet og As disposisjoner var helt og fullt foretatt i samsvar med prinsipalens interesser. Avgjørelsen det er vist til i herredsrettens dom på side 7, Rt-1993-513 og side 518, avviker fra nærværende sak ved at det der var tale om flere medeiere i de berørte selskapene. A var eneeier og kunne ikke være utro mot seg selv.

Selskapets kreditorer er beskyttet ved andre regler enn utroskapsbestemmelsen i straffeloven §275. Det formelle forhold ved at X

A/S var et selvstendig rettssubjekt, kan ikke være avgjørende så lenge det ikke var noen "annens tarv" det kunne handles imot.

Til støtte for dette viser jeg til Johs. Andenæs Formuesforbrytelsene (5. utg.), 135, ..."

Jeg er kommet til at anken her ikke fører frem. Spørsmålet om en aksjonær kan dømmes for utroskap i forhold til et gyldig etablert aksjeselskap hvor han innehar samtlige aksjer - om han da ved handlinger rettet mot selskapet kan sies å ha forsømt "en annens" anliggender eller handlet mot "den annens" tarv - er som herredsretten nevner drøftet av Andenæs i Formuesforbrytelsene (utg 1992 135) og av Stordrange i Den norske Advokatforenings småskrift nr 53 "Strafferettslig utroskap" (1989). Andenæs besvarer spørsmålet med nei, mens Stordrange, etter en omtale av praksis knyttet til selskapsforhold, konkluderer med (side 56) å svare ja.

Jeg er enig med herredsretten i at avgjørelsen i Rt-1993-513 må tillegges betydelig vekt. Den saken gjaldt riktignok kommandittselskapsforhold, og de tiltalte var ikke eneeiere, men de gjorde gjeldende at de transaksjoner som av herredsretten var blitt bedømt som utroskap, var skjedd i forståelse med samtlige interessenter i selskapene. Jeg kan likevel ikke oppfatte avgjørelsen annerledes enn at Høyesterett sluttet seg til Stordranges syn på lovanvendelsen, som det også vises uttrykkelig til. Førstvoterende (side 518) erklærer seg enig i herredsrettens uttalelse om at "Som aksje-/kommandittselskaper var de selvstendige rettssubjekter og det er i denne forbindelse uten betydning hvem som er eiere av selskapene". Han la for egen regning til at "den valgte selskapsform må respekteres og gis gjennomslag".

**Side 1004**

Etter min oppfatning har dette standpunkt gode grunner for seg. Høyesterett har også i andre sammenhenger lagt til grunn at når en næringsdrivende har valgt å drive sin virksomhet i aksjeselskaps form, så er selskapet å betrakte som et selvstendig rettssubjekt, og selskapsformuen å anse som fremmed formue som aksjonærene ikke kan råde over for egne formål i andre former enn dem aksjeselskapslovgivningen tillater. Jeg mener det gir best sammenheng i reglene om selskapet også i relasjon til bestemmelser i straffeloven som beskytter tredjemanns formuesinteresser, betraktes som "en annen" enn aksjonæren eller aksjonærene.

Det kan da reises spørsmål om ikke de pengeuttak saken gjelder rettelig burde vært ansett som underslag, ikke utroskap, jf henvisningen i §275 tredje ledd til §255 og §256. Dette kan sies å måtte være konsekvensen av mitt syn på X A/S som "en annen" enn domfelte. Spørsmålet om omsubsumering er imidlertid ikke tatt opp under prosedyren og jeg tar da ikke stilling til det.

Jeg tilføyer at om man i forhold til de nevnte straffebestemmelser skulle tenke seg å sondre mellom tilfelle hvor det er en eller flere aksjonærer, eller mellom tilfelle hvor selskapet på handlingstidspunktet var solvent eller insolvent, ville man etter min mening kunne bli stillet overfor vanskelige avgrensningsspørsmål.

Når det gjelder straffutmålingen, bemerker jeg at domfelte foruten for utroskap som nevnt, er dømt for regnskapsforsømmelse under særlig skjerpende omstendigheter, for dokumentfalsk, og for skatte- og avgiftsunndragelse av ikke ubetydelige beløp. Jeg er enig i det som er fremholdt av herredsretten om det skjerpende ved hans forhold, særlig når de sees i sammenheng, og i at det er nødvendig med en følbar straffereaksjon. Den samlede straffetid fastsatt i dommen vil jeg derfor ikke endre. Herredsretten peker imidlertid på at domfeltes lovbrudd ikke har fått dramatiske følger for andre fordi konkursfordringene ikke var så store, og på at domfelte i ettertid har vist vilje til å gjøre opp for seg. Når det også sees hen til reaksjonsnivået i andre sammenlignbare saker, finner jeg det forsvarlig å redusere den ubetingede del av fengselsstraffen til 45 dager.

Jeg stemmer for denne dom:

I herredsrettens dom gjøres den endring at den ubetingede del av straffen settes til fengsel i 45 - førtifem - dager. Fullbyrdelsen av den idømte straff for øvrig utsettes etter reglene i straffeloven §§ 52, §53 og §54 med en prøvetid på 2 - to - år.

*Dommer Gussgard*: Jeg anser dommen i Rt-1993-513 avgjørende for spørsmålet om selskapet må anses for "en annen" i relasjon til straffeloven §275, og tar derfor ikke stilling til om resultatet tilsies av reelle grunner. Jeg tiltrer førstvoterendes uttalelse vedrørende straffeloven §255, men reserverer meg mot at et selskap må anses som "en annen" enn eneaksjonæren ved anvendelse av andre bestemmelser i straffeloven som bruker tilsvarende uttrykk. Jeg tar heller ikke standpunkt til om straffeloven §275, eventuelt §255, kan komme til anvendelse

**Side 1005**

i tilfeller hvor selskapet kunne ha utdelt beløpet som utbytte. Mine bemerkninger innebærer ikke at jeg er uenig i at den foreliggende dommen må bli stående. Jeg er enig med førstvoterende når det gjelder straffutmålingen.

*Dommer Halvorsen*: Jeg er enig med førstvoterende dommer Bugge.

*Dommer Aarbakke*: Likeså.

*Dommer Skåre*: Jeg er enig med annenvoterende dommer Gussgard.

Etter stemmegivningen avsa Høyesterett denne dom:

I herredsrettens dom gjøres den endring at den ubetingede del av straffen settes til fengsel i 45 - førtifem - dager. Fullbyrdelsen av den idømte straff for øvrig utsettes etter reglene i straffeloven §52, §53 og §54 med en prøvetid på 2 - to - år.

Sist oppdatert 6. februar 2008