BLANK ROME LLP
Attorneys for Plaintiff
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROLV BERG DRIVE AS,<br><br>               Plaintiff,<br><br>       - against -<br><br>NORTH OFFSHORE AS and TROMS OFFSHORE AS,<br><br>            Defendants. | 07 Civ. 11502 (SHS) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT NORTH OFFSHORE AS'
MOTION TO VACATE ADMIRALTY SUPPLEMENTAL
RULE B PROCESS OF MARITIME ATTACHMENT
AND GARNISHMENT AND ATTACHMENT ORDER**

*Jeremy J.O. Harwood*
*Blank Rome LLP*
*405 Lexington Avenue*
*New York, NY 10174*
*212-885-5000*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT.........................................................................................1

THE BASIC FACTS...........................................................................................................2

    1.      The Prior Action ..........................................................................................2

            (i)      NOA's Counsel's Assertions That RBD's Side Letter Claim Is A Separate Cause of Action ...............................................................3

            (ii)     RBD's Acceptance Of NOA's Position As Permitting It To File Its Own Rule B..............................................................................5

    2.      The Norwegian Writ .....................................................................................7

ARGUMENT .....................................................................................................................9

POINT I..............................................................................................................................9

        NOA MAY NOT SEEK DISMISSAL OF THE ACTION UNDER THE GUISE OF VACATUR .......................................................................9

POINT II ..........................................................................................................................10

        ROLV BERG HAS ESTABLISHED A PRIMA FACIE ADMIRALTY CLAIM THAT WILL BE RESOLVED BY THE NORWEGIAN COURT ...............................................................................10

    A.     The Rule B Standard ...................................................................................10

POINT III .........................................................................................................................11

        RBD'S RULE B ACTION IS NOT FORECLOSED BY THE OPINION ..................................................................................................11

    1.      THE APPLICABLE LEGAL STANDARD.................................................12

            (i)      Res Judicata........................................................................................12

            (ii)     Federal Collateral Estoppel Law ........................................................13

i

      2.     APPLICATION OF THE STANDARDS TO THE PRIOR ACTION .......13

POINT IV ..............................................................................................................................15

          THE AQUA STOLI "CONVENIENCE" EXCEPTION DOES NOT
          SUPPORT AN EQUITABLE VACATUR .................................................15

      1.     The Chiquita Decision ................................................................................16

      2.     ProShip Line ...............................................................................................17

CONCLUSION .....................................................................................................................18

128127.00601/6624577v.4

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Allen v. McCurry*, 449 U.S. 90, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980)..............13

*Austin v. Downs, Rechlin & Martin*, 114 *Federal Appx. 21, 22*, 2004
    WL24764641 (2d Cir. 2004).............................................................................13

*Aqua Stoli Shipping Ltd. v. Gardner Smith PTY Ltd.*, 460 F.3d 434 (2d Cir.
    2006).................................................................................................................15

*Chiquita International Ltd. et al. v. M/V BOSSE et al.*, 518 F. Supp. 2d 589
    (S.D.N.Y. 2007)..................................................................................2, 15, 16, 17

*Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A.*, 2007 U.S.
    Dist. LEXIS 18827 (S.D.N.Y. Feb. 26, 2007) .....................................................3

*Gelb v. Royal Globe Insurance Co.*, 798 F.2d 38 (2d Cir. 1986) ...........................13

*Interoceanica Corp. v. Sound Pilots*, 107 F.3d 86 (2d Cir. 1997)..........................13

*King v. Fox*, 418 F 3d 121, 131 (2d Cir. 2005).......................................................12

*Legnani v. Alitalia Linee Aeree Italiane, S.p.A.*, 400 F.3d 139 (2d Cir.
    2005)................................................................................................................12

*Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519 (S.D.N.Y. 2006).....................10

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002)............................13

*OGI Oceangate Transportation Co. Ltd. v. RP Logistics Pvt Ltd., et al.*,
    2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. June 26, 2007)..................................10

*ProShip Line Inc. v. Aspen Infrastructures Ltd.*, 07 *Civ. 10969*, 2008 WL
    336471 (S.D.N.Y. Feb. 1, 2008) .......................................................................17

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996).................................13

*St. Pierre v. Dyer*, 208 F.3d 394 (2d Cir. 2000) .....................................................12

iii

## <u>TABLE OF AUTHORITIES</u>
(continued)

<u>Page</u>

## FEDERAL STATUTES

Fed. R. Civ. P. 12 ..........................................................................................................9

iv

## PRELIMINARY STATEMENT

Pursuant to a Verified Complaint and accompanying Rule B affidavit of Jeremy J.O. Harwood, Esq., dated December 21, 2007 ("Harwood Aff.") and declaration of Olav Vikoren dated December 21, 2007 ("Vikoren Dec." or "Declaration")[1] Plaintiff Rolv Berg Drive A.S. ("RBD") obtained an attachment order dated December 26, 2007 ("Attachment Order") pursuant to Rule B of the Supplemental Rules For Certain Admiralty and Maritime Claims ("Supplemental Rule B"). Defendants NORTH OFFSHORE AS ("NOA") and TROMS OFFSHORE AS ("TROMS") have moved, inter alia, to "vacate" the Attachment Order.

RBD has agreed to release the attachment of the electronic fund transfers ("EFTs") to or from TROMS and to dismiss TROMS without prejudice. Accordingly, Defendants' motion to "vacate," as supported by their memorandum of law dated February 29, 2008 ("Brief"), is moot in respect of the relief sought by TROMS (Brief, Point II).

Defendant NOA's remaining allegations are that:

> (i)    the Court has already ruled on the merits of RBD's complaint and that "RBD has introduced no new evidence whatsoever … to buttress the strength of its claims" so that there is "no reason for this Court to revisit the merits of RBD's claims," Brief at 10; and
>
> (ii)    the "concept of convenience" applied by Judge Leisure in a case with a "unique posture" should apply here for vacatur. Brief Point III.

---

[1]    Definitions, unless otherwise stated, are taken from those pleadings.

NOA's arguments are without merit and are contradicted by its counsel's earlier statements to the Court.

## THE BASIC FACTS

The basic facts are set out in the Harwood Affidavit and Vikoren Declaration and their exhibits. We should emphasize at the outset that this action was filed and marked as "related" to NOA's own earlier Rule B Action to avoid any assertion of "sharp practice" and for the express purpose of this Court reviewing the ex parte application. Counsel for RBD was not aware of Judge Stein's schedule and that, in his absence, the papers would be referred to the Part I judge. Nevertheless, Defendants in arguing for equitable vacatur make the entirely gratuitous comparison to another plaintiff (Bosse)[2] that "was more underhanded than RBD is here." Brief at 16. NOA was well aware that once RBD had brought its claim in Norway the filing of this separate action would come. Indeed, the Court said as much at the initial pre-trial conference on February 8, 2008. The Harwood Affidavit provided full disclosure of the "prior action," discussed below.

### 1.    The Prior Action

NOA filed a Rule B action in this Court entitled North Offshore A.S. v. Rolv Berg Drive A.S. 07 CIV 3095 (SHS) (the "Prior Action") by complaint dated April 17, 2007 (the "Complaint").

RBD originally filed a motion for counter-security under Supplemental Rule E. In opposition to the Rule E counter-security request NOA filed a memorandum of law dated

---

[2] Chiquita Int'l Ltd. et al. v. M/V BOSSE et al., 518 F. Supp.2d 589 (S.D.N.Y. 2007).

2

October 1, 2007 asserting that "RBD's purported counterclaim <u>does not 'arise from the same transaction or occurrence'</u> as the claims of North Offshore." Harwood Aff., Ex. A. <u>Id</u>. at 12 (emphasis added).

The significance of NOA's position, which was not known to RBD until stated in the opposition brief, is that Rule E(7) permits security on a counterclaims:

> (a)   When a person who has given security for damages in the original action asserts a counterclaim **that arises from the transaction or occurrence** that is the subject of the original action … [emphasis added]

Further, decisions from this Court, have limited a Rule E counterclaimant's security to the same sum as actually attached as the Rule B plaintiff, with the amount sought by the plaintiff being the ceiling on countersecurity. <u>See</u>, <u>Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A.</u>, 2007 U.S. Dist. LEXIS 18827 (S.D.N.Y. Feb. 26, 2007) (PKL). Here NOA sought $988,411 and had attached approximately half that amount whereas RBD's counterclaim was for $16,235,900 and, based on the considerations above, "countersecurity" would likely be considerably limited.

> (i)   **NOA's Counsel's Assertions That RBD's Side Letter Claim Is A Separate Cause of Action**

At oral argument on October 3, 2007 NOA's counsel repeated the argument that RBD's counterclaim did not qualify under Rule E(7)(a). The following argument was made by NOA's counsel:

> THE COURT: Well, you're not even arguing that as your primary point. Your primary point is that it's a simple, non-maritime option contract. Maybe that is the same point; I don't know.

3

MR. FREVOLA: Actually, it isn't, Your Honor. If it's a maritime contract and **they're unrelated, then counter security shouldn't be awarded. And then he has a right to commence his Rule B**.

THE COURT: Right.

MR. FREVOLA: I'm saying there's a step further here in that he may not be able to sustain his burden of showing it's a maritime claim if he goes to that Rule B. So the kind of a summary assertion that I could get this if this was a Rule B myself –

THE COURT: Right.

MR. FREVOLA: – puts the cart before the horse, Your Honor.

THE COURT: I understand the point. What do you do to his statement that this is the same – arises out of the same occurrence or transaction? Do you simply say well, it's clear not, it's two different contracts?

MR. FREVOLA: Well, the – the tests that are given, Your Honor, for looking at whether it falls into the same thing is like a Rule 13(a) compulsory counterclaim. The facts that we're dealing with on both claims are – **I think counsel would agree there are no related facts**. One goes to the issue of the vessel's use and payment not being made for it. The other goes to whether or not there was a procurement of a second contract.

**And those are not related facts. They're not related occurrences. And there very well may not be any related law in terms of the issues either**. I think that the one way that this perhaps survives those defects is what's known as the logical relationship test, which tends to hump together or lump together claims brought under the same contract.

The problem is, Your Honor, this is not a clause to the charter part[y].

THE COURT: Right. It's a separate contract.

4

MR. FREVOLA: It's a separate agreement.

THE COURT:  Okay.

MR. FREVOLA: And that's why I think you have a problem, because even a logical relationship argument, your Honor, falls astray here, because they're not the same contract.

Harwood Aff.; Ex. A. Tr. at 15-17. [emphasis added]

### (ii) **RBD's Acceptance Of NOA's Position As Permitting It To File Its Own Rule B**

RBD filed a reply brief on the morning of the First Hearing which stated

"[a]ccepting that position, RBD should be entitled to maintain its own and separate action

for Rule B relief." Id. at 7.

At the conclusion of the hearing RBD's counsel represented to the Court:

But the long and short of it, Your Honor, is if they want to say – and we have conceded if they want to say no, you're not entitled to your counter security under the side letter, because the side letter is a separate contract, **then I'm instructed to say fine, we don't want counter security, we'll go for Rule B relief if we can get it**.

THE COURT: Do that again.

MR. HARWOOD: If they pleaded in the alternative, Your Honor, in the brief that if they – accepting their position that the side letter is a separate contract, **then we will take the position, then, we should be entitled, if it is a separate contract, to maintain our own separate Rule B action**.

THE COURT: **No.  No, that I understand.  And as a matter of fact, I said that when we first began**.  And Mr. Frevola's response to that is he doesn't think there's admiralty jurisdiction.  I think he's got a tough road on that one, but that's his position.

MR. HARWOOD: That will be for him to show if we're successful in attaching any of the plaintiff's wire transfers

5

through New York. And given their plea of poverty, it
sounds like we won't be. But that's a commercial risk our
client is prepared to take.

THE COURT: Right. All right.

Id., page 40-41. [emphasis added]

The Court held another hearing on November 5, 2007. Harwood Aff. No. 2,[3] Ex.

A (the "Second Hearing"). The Court read its decision denying the counterclaim. RBD's

counsel attempted to clarify his client's position:

THE COURT: Are you telling me that at the -- at the
October 3rd hearing you withdrew the motion?

MR. HARWOOD: That's right, Your Honor. I said
that my client had taken the commercial decision to withdraw
the motion to -- in order to go with its own Rule B, which --
with its own inherent risk, given the fact that he's claimed not
to have any money. So that was the point.

Why would we bring a Rule B if, in fact, this plaintiff -
- when it's subject to his own Rule B action against it? It
doesn't have any money shuttling backwards and forwards.
And that was why I said on the record this was a commercial
risk that my client was prepared to take. And indeed, it's
what I said in the brief, which I know was filed the afternoon
before the -- or the morning of the hearing.

Accepting that position, RBD should be entitled to
maintain its own separate action, so --

THE COURT:       No, I -- I -- definitely remember
that, but I thought what that point was is that if you lose here,
you maintain the ability to bring a separate action.    I
remember that discussion. And I thought that my either
mental response or actual response to that -- I don't know
whether I articulated it - is well, if you feel that you can bring
a separate action under Rule B, you should go ahead and

---

[3] See accompanying affidavit dated March 24, 2008.

6

> bring a separate action under Rule B. But I -- that discussion
> I remember.

Aff. No. 2, Ex. A at 17-18.

The Court issued a memorandum opinion dated November 29, 2007 ("Opinion")

and order dated November 5, 2007 denying RBD's request for Rule E counter-security.

Harwood Aff. Exs C & D. In the Opinion the Court stated that the facts "would suggest

that RBD's counterclaim is not a mandatory counterclaim entitled to countersecurity."

Id. at 7. It did not ground its Opinion on that basis noting, in its conclusion, "RBD's

counterclaim may not even constitute a mandatory counterclaim for purposes of Rule

E(7)", as was NOA's stated position and was accepted on the record by RBD.

As the Court is aware, at no stage did NOA's counsel protest that a separate Rule

B action would be inequitable or "underhanded" or prohibited by the Prior Action. As

quoted above, NOA's counsel stated the contrary.

### 2.    The Norwegian Writ

RBD has submitted as exhibits to the Vikoren Declaration, attached as Exhibit E

to the Harwood Declaration (with exhibits) copies of the pleadings (with English

translation) of its submission of its claim under the Side Letter Agreement to the Nord-

Troms County Court, dated November 7, 2007 (the "Norwegian Writ") Vikoren Dec.

Exs. 2 & 3. The Norwegian Writ states in material part:

> [1]    The legal basis for this claim is the rules of damages in
> contract. The agreement between the Plaintiff and the
> Defendant contains two cumulative terms that must be
> met in order for the option to be exercised. Firstly, the
> Plaintiff must have been offered a contract from
> ONGC, and secondly, the Defendant must have

7

secured their contract with the vessel's owner. Beyond those requirements, there are no further obligations under the Option Agreement.

[2]    As described above, the Plaintiff was successful in winning the tender from ONGC and was therefore awarded a contract as mentioned in the Option Agreement. Further, since entering into the Option Agreement and up to and including today, the vessel has been on charter from its owner to the Defendant. Therefore, the requirements necessary to exercise the option were met.

[3]    The Plaintiff has suffered a substantial loss of income as a consequence of the breach of contract by the Plaintiff. In accordance with the tender documents, the Plaintiff was offered a contract for 5 years with a rate of USD 15,900 per day. Under the Option Agreement, the daily rate is maximum USD 9,000 per day, which gives an expected earning for the Plaintiff of USD 6,900 per day. Based on an expected duration of 5 years, the Plaintiff would have had an earning totaling to (6,900 x 365 x 5) USD 12,592,500 for the period.

[5]    In addition, the Plaintiff has provided a performance bond to ONGC for USD 422,150. A performance bond is a bank guarantee for correct fulfillment of a contract. By not fulfilling their obligations toward ONGC, ONGC has demanded payment under the performance bond, and the Plaintiff has therefore incurred a further loss of USD 442,150.

[6]    The Plaintiff notes that the Defendant in the correspondence between the parties has argued legally against the Plaintiff's right to exercise the Option Agreement. However, it cannot be considered that the requirements in the Option Agreement were not met. The Plaintiff appreciates that the "Aldoma" does not meet all the requirements contemplated under the tender requirements; however, this was clarified to ONGC in the offer documents. Therefore, the tender was awarded to the Plaintiff on basis of the vessel as

8

> described in the offer documents.  Whether or not the
> vessel was suitable, is an issue between the Plaintiff
> and ONGC, inasmuch as the vessel is not utilized in
> breach of the contract between the Plaintiff and
> Defendant.

[emphasis added]

Quite clearly RBD submitted substantive additional evidence and directly
addressed the contention, as had been previously asserted by NOA, that, as recorded in
the Opinion, "it was not possible to extend RBD's charter party because the condition
precedent ... was not fulfilled ...".  Harwood Aff. Ex. C, p. 4.  NOA has not chosen to
rebut the Vikoren Declaration on the issue.

## ARGUMENT

### POINT I

### NOA MAY NOT SEEK DISMISSAL OF THE ACTION UNDER THE GUISE OF VACATUR

Rule E(4)(f) entitled "Procedure for Release From Arrest or Attachment" refers to
the plaintiff's obligation to show "why the arrest or attachment should not be vacated"
"[w]henever property is arrested or attached."  RBD has not attached any "property"
belonging to NOA for which vacatur can be properly sought.  Instead, NOA seeks to
eviscerate RBD's action by an order "to vacate the Attachment Order"
itself. As Judge Leisure noted in Chiquita, 518 F. Supp.2d at 596:

> . . . E(4)(f) allows a motion for vacatur of attachment, but
> does not provide for dismissal ... Rule 12 of the [F.R. Civ. P.]
> is the proper vehicle by which a party moves to dismiss. See
> Fed. R. Civ. P. 12. GWF, however, made no mention of Rule
> 12 in its submission to the Court.  Courts "will not consider
> such an argument lest Rule 12(b)(6) be completely subsumed

9

by Supplemental Rule E(4)(f)." Maersk, Inc. v. Neewra, Inc., 443 F. Supp.2d 519, 531 (S.D.N.Y. 2006).

NOA's motion to "vacate," seeking dismissal of the Attachment Order rather than

release of any of its "property," is "procedurally deficient," Id., and may be denied on

that basis alone. It is also without merit, as discussed below.

## POINT II

### ROLV BERG HAS ESTABLISHED A PRIMA FACIE ADMIRALTY CLAIM THAT WILL BE RESOLVED BY THE NORWEGIAN COURT

### A.   The Rule B Standard

As held by Judge Sweet in OGI Oceangate Transportation Co. Ltd. v. RP Logistics

Pvt Ltd., et al., 2007 U.S. Dist. LEXIS 46841 * 1-2 (S.D.N.Y. June 26, 2007):

> Of the courts in this district that have considered the issue, the majority have interpreted Aqua Stoli to require the application of the prima facie standard when considering the adequacy of the claim asserted in the context of a maritime attachment. [citations omitted] The relevant inquiry is therefore whether OGI has pled a prima facie admiralty claim against RPI. See Fesco Ocean Mgmt. Ltd., 2007 WL 766115, at 2 ("courts should simply consider whether a plaintiff seeking to maintain a maritime attachment has pled a prima facie case justifying that attachment under Rule B").

The Opinion expressly differentiated between the prima facie standard and held:

> ... the Aqua Stoli standard for Rule B attachment is not the standard that applies to motions for countersecurity brought pursuant to Rule E(7).

Id. at 3.

Applying the "broad discretion" standard the Court denied the counterclaim. It

held:

> . . . whether to grant or deny RBD's motion for
> countersecurity is an equitable determination within the broad
> discretion of this Court.

Id. at 4.

It is undisputed that the merits of the underlying claim for which RBD seeks security are subject to resolution in the Norwegian Court. Vikoren Dec. ¶ 4, Ex. 2. Accordingly, assertions in the Prior Action that a "condition precedent" in the Side Letter Agreement are not met are not only irrelevant but also rebutted in the Norwegian Writ, which is an issue of Norwegian law for the Norwegian court. Id.

RBD has established a prima facie admiralty claim.

## POINT III

### RBD'S RULE B ACTION IS NOT FORECLOSED BY THE OPINION

NOA's only legal (as opposed to equitable) argument for vacatur of the Attachment Order, despite none of its property having been attached to date, is that "there is no reason for this Court to revisit the merits of RBD's claims." Brief at 10. This is disingenuous both because it fails to acknowledge the different legal standards for review of Rule B compared to Rule E, supra, and the reason why that the Opinion held that RBD's Rule E counter-claim was "highly speculative" and "frivolous": RBD did not submit rebuttal evidence. RBD's counsel stated at the First Hearing, if NOA took the position that the "[S]ide [L]etter is a separate contract, then I'm instructed to say fine, we don't want counter security we'll go for Rule B relief if we can get it." Harwood Aff., Ex. B at 40. He further explained at the Second Hearing:

> ... I should add, that we didn't go to the expense of putting in
> rebuttal affidavits, because that wasn't the route we were
> going to go down. That's -- obviously, any Rule B complaint
> alleging the allegations which are the foundation for the
> counter security is going to have to be a prima facie case
> which is properly supported and is going to address the
> evidence against that.
>
> So that's the reason that we didn't put any rebuttal evidence
> in.

Harwood Aff. 2, Ex. A. at 21.

## 1.    THE APPLICABLE LEGAL STANDARD

The suggestion that, because of the Opinion, the Court should not "revisit the

merits" and take "judicial notice" of its prior ruling, to dismiss RBD's Attachment Order

(and presumably the Complaint) is specious.  The only legal basis for holding the

Opinion bars this action is res judicata or collateral estoppel.

### (i)    **Res Judicata**

As stated in King v. Fox, 418 F 3d 121, 131 (2d Cir. 2005):

> Under the doctrine of res judicata or claim preclusion, "[a]
> final judgment on the merits of an action precludes the parties
> or their privies from relitigating issues that were or could
> have been raised in that action."  Legnani v. Alitalia Linee
> Aeree Italiane, S.p.A., 400 F.3d 139, 141 (2d Cir. 2005)
> (quoting St. Pierre v. Dyer, 208 F.3d 394, 399 (2d Cir.
> 2000)).  Two causes of action may be parallel but distinct.  As
> this court has explained:
>
> "[T]he fact that both suits involve[  ] essentially the same
> course of wrongful conduct is not decisive; nor is it
> dispositive that the two proceedings involved the same
> parties, similar or overlapping facts, and similar legal issues.
> A first judgment will generally have preclusive effect only
> where the transaction or connected series of transactions at
> issue in both suits is the same, that is where the same

12

> evidence is needed to support both claims, and where the facts essential to the second were present in the first."
>
> Interoceanica Corp. v. Sound Pilots, 107 F.3d 86, 91 (2d Cir. 1997) (quoting SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1463-64 (2d Cir. 1996)).

See also, Allen v. McCurry, 449 U.S. 90, 90, 101 S.Ct. 411, 66 L. Ed. 2d 308

(1980) ("a final judgment on the merits of an action precludes the parties or their privies

from relitigating issues that were or could have been raised in that action.")

### (ii)    **Federal Collateral Estoppel Law**

In Austin v. Downs, Rechlin & Martin, 114 Fed. Appx. 21, 22, 2004

WL2476464*1 (2d Cir. 2004) (Summary Order) the Court defined the doctrine of

collateral estoppel as follows:

> Under the doctrine of collateral estoppel (issue preclusion), a plaintiff is prevented from relitigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior proceeding. See Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288 (2d Cir. 2002). This Court has held that federal law on collateral estoppel applies to determine the preclusive effect of a prior federal judgment. See Marvel Characters, Inc., 310 F.3d at 286; Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 42 (2d Cir. 1986). Under federal law, collateral estoppel applies when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir. 1997) (internal quotation marks omitted).

### 2.    APPLICATION OF THE STANDARDS TO THE PRIOR ACTION

NOA essentially concedes that neither standard applies in stating:

13

> While this Court made clear that its [Opinion] was not an
> ultimate ruling on the merits ...

Brief at 10.

Indeed, at the Second Hearing NOA's counsel stated:

> MR. FREVOLA: And Your Honor, it's quite clear that -- and
> I'll say this on the record -- that Your Honor's decision here
> is based on an incomplete set of facts and does not have --
>
> THE COURT: Well, that's why I said very -- I said based on
> what I know so far.
>
> MR. FREVOLA: **There's no res judicata, collateral
> estoppel effect**, and we would not --

Second Hearing at 20 (emphasis added).

Moreover, NOA claims that "despite this Court's characterization of RBD's counterclaim ... on the record before the Court, RBD has introduced no new evidence whatsoever in its Verified Complaint to buttress the strength of its claims." Brief at 10. This is wrong. It ignores entirely the Vikoren Declaration and the Norwegian Writ. Id., Ex. 3.

It should be further noted that no challenge has been made to the assertion that RBD's claim under the Side Letter is a maritime dispute, as a matter of Norwegian Law, as specifically stated by Mr. Vikoren. Dec. ¶ 3. This issue was raised as a threshold issue by NOA at the time of the First Hearing. Id., p. 15-16. ("he may not be able to sustain his burden of showing it's a maritime claim if he goes to that Rule B").

14

## POINT IV

## THE AQUA STOLI "CONVENIENCE" EXCEPTION
## DOES NOT SUPPORT AN EQUITABLE VACATUR

Aqua Stoli Shipping Ltd. v. Gardner Smith PTY Ltd., 460 F.3d 434, 443 (2d Cir.

2006) stated the historical rationale for maritime attachments:

> Maritime attachments arose because it is frequently, but not
> always, more difficult to find property of parties to a maritime
> dispute than of parties to a traditional civil action. Maritime
> parties are peripatetic, and their assets are often transitory.
> [citation omitted]

The Court went on to state that precisely because of the "historical purposes of

maritime attachments" it adopted as the Rule E(4)(f) standard for vacatur as "the limited

former Local Rule 12 practice" Id. at 444, citing, inter alia, Eddie S.S. Co. v. P.T.

Karana Line, 739 F. 2d 37, 39 (2d Cir. 1984) (per curiam) ("[E]quity powers of an

admiralty court remain severely circumscribed...") Id. at 444. The Court provided

examples of the admiralty courts "equitable discretion," none of them apply here to

vacate RBD's Rule B against NOA.

NOA claims that Chiquita Int'l Ltd. et al v. M/V BOSSE, et al 518 F. Supp. 20

589 (S.D.N.Y. 2007) provides "similar circumstances" to permit the Court to exercise

both its "inherent authority" and equitable powers to vacate not just the attached EFTs[4]

but also the entire Attachment Order, in effect a dismissal of the action. Brief at 18.

---

[4]     That request is moot as RBD has agreed to release the EFTs and to dismiss Troms.

15

## 1.    The Chiquita Decision

NOA examines at considerable length the Chiquita decision where Judge Leisure

stated:

> Although the instant case does not fall squarely within the
> Second Circuit's guidelines [under Aqua Stoli], vacating the
> attachment in this case, given the unique posture is a logical -
> and limited-extension of those guidelines.

518 F. Supp. 2d at 598.

The Court stated that Bosse "abused the attachment process and took advantage of

the ex parte nature of a Rule B order …" (Id. at 559) in filing a separate action against

Great White Fleet ("GWF") one month after being sued by GWF and Chiquita:

> … despite Bosse's knowledge that GWF already was before
> the [SDNY] in the related [earlier] Chiquita action arising out
> of the same facts and between the same parties.

518 F. Supp. 2d at 559. (emphasis added)

Judge Leisure dismissed all three of Bosse's justifications for its later "unrelated"

action, including one that is particularly relevant here. At the oral argument Bosse's

counsel:

> … asserted that an ex parte order was appropriate because if it
> pursued the alternative and sought [Rule E] counter-security
> in the Chiquita action, Bosse likely would have received a
> dollar-for-dollar equivalent order of attachment to place it on
> equal footing with Chiquita/GWF …

Id. at 598.

In other words, Bosse rather than seeking Rule E countersecurity, which it

considered (correctly) that Judge Leisure would limit to the same sum as attached by the

GWF plaintiff, deliberately filed a separate action to obtain greater security.

16

## 2. ProShip Line

NOA also cites ProShip Line Inc. v. Aspen Infrastructures Ltd., 07 Civ. 10969,

2008 WL 336471 (S.D.N.Y. Feb. 1, 2008). Judge Sweet held:

> Instead of appearing in the First New York Action as an assignee of EP-Team, where it would be entitled to assert a counterclaim and to seek counter security, ProShipLine filed a separate lawsuit knowing that Aspen was before the Court and yet still asserted that Aspen was not "found" within the District. ProShipLine's maritime attachment must therefore be vacated.

NOA's "gloss" on the ruling is that "ProShip Line - like RBD here - already has

jurisdiction over its adversary ... based on the initial Rule B proceeding." Brief at 14.

NOA can only argue Chiquita has "similar circumstances" by entirely ignoring its

counsel's previous and unequivocal position that RBD has no right to Rule E(7) counter-

security, as stated fully above.[5]  The extension of the limited "concept of convenience"

exception was applied to "unique" circumstances. Id. at 599.

NOA states that "RBD's course of action was to defend in the [Prior Action] and -

if it desired to do so - obtain counter-security ..." Brief at 15.  The argument that either

case is relevant is, in the circumstances and well developed record, frivolous.

---

[5] Here NOA's counsel stated at the First Hearing "there are no related facts" and "there very well may not be any related law" and "he has a right to commence his Rule B."  Moreover, while for the purposes of full disclosure the action was filed as "related".  Bosse's "failed to mark as related" its action, despite "one of Bosse's own claims arises directly from the Chiquita action...".  518 F. Supp. 2d at 598 and 600 n.5.

17

## CONCLUSION

In the circumstances, Plaintiff RBD respectfully requests that the Court deny the motion to vacate the Attachment Order by Defendant NOA and grant such other and further relief as it may deem just.

Dated:   New York, NY
         March 24, 2008

                              BLANK ROME, LLP
                              Attorneys for Plaintiff

                              By: _____
                                  Jeremy J.O. Harwood (JH 9012)
                                  The Chrysler Building
                                  405 Lexington Avenue
                                  New York, NY 10174
                                  Tel.: (212) 885-5149

18