BLANK ROME, LLP
Attorneys for Plaintiff
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY  10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ROLV BERG DRIVE AS,<br><br>    Plaintiff,<br><br>   - against -<br><br>NORTH OFFSHORE AS and TROMS OFFSHORE AS,<br><br>    Defendants. | 07-Civ. 11502 (SHS)<br><br>**AFFIDAVIT OF<br>JEREMY J.O. HARWOOD** |

STATE OF NEW YORK  )
         : ss:
COUNTY OF NEW YORK )

   JEREMY J.O. HARWOOD, being duly sworn, deposes and says:

   1.  I am a member of the firm of Blank Rome, LLP attorneys for the Plaintiff

herein.

   2.  I attach as Exhibit A hereto a true copy of the transcript of a hearing on

November 5, 2007.

                   _Jeremy Harwood._
                    Jeremy J.O. Harwood

Sworn to before me this
24th day of March, 2008

   Notary Public

NEAL MITCHELL
Notary Public, State of New York
No. 01MI6114408
Qualified in New York County
Commission Expires Aug. 16, 20_08_

128127.00601/6625725v.1

# EXHIBIT A

```
 1                    UNITED STATES DISTRICT COURT
 2                    SOUTHERN DISTRICT OF NEW YORK

 3    ------------------------------x
 4    NORTH OFFSHORE A.S.,

 5                    Plaintiff
 6                                        DOCKET NO.: CV-07-3095 (SHS)
 7                    -vs-                 New York, New York
 8                                         November 5, 2007
 9    ROLV BERG DRIVE A.S.,


10                    Defendant
11    ------------------------------x

12            TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE

13            BEFORE THE HONORABLE SIDNEY H. STEIN
14                 UNITED STATES DISTRICT JUDGE


15    A P P E A R A N C E S:

16    For the Plaintiff:          MICHAEL J. FREVOLA, ESQ.
17                                Holland & Knight LLP
18                                195 Broadway
19                                New York, NY   10007


20    For the Defendant:          JEREMY O. HARWOOD, ESQ.
21                                Blank Rome LLP
22                                405 Lexington Avenue
23                                New York, NY   10174




24    Audio Operator:             No Audio Operator

25         Proceedings Recorded by Electronic Sound Recording
26         Transcript Produced by Transcription Service
27    ----------------------------------------------------------
28                        KRISTIN M RUSIN
29                     217 Pine Meadows Circle
30                        Hickory NC 28601
31                     kmrusin@earthlink.net
```

1           THE CLERK:  North Offshore versus Rolv, zero seven

2    civil three zero nine five.

3           Counsel, please state your names for the Court.

4           MR. FREVOLA:  Michael Frevola, Holland & Knight, for

5    the plaintiff, North Offshore.  Good afternoon, Your Honor.

6           THE COURT:  Good afternoon, sir.

7           MR. HARWOOD:  Good afternoon, Your Honor.  Jeremy

8    Harwood, Blank Rome, for the defendant, Rolv Berg.

9           THE COURT:  All right.  Good afternoon.

10           Please be seated, gentlemen.  I've brought you in for

11    a determination on defendant's motion to seek counter security.

12    At our pretrial conference on October 3rd, we had a discussion

13    of that, and I sent the parties away to see if they could

14    resolve it themselves.  Having heard nothing, I take it it's

15    unresolved as of now, and I will render the decision, which is

16    as follows.

17           Rolv Berg Drive, which I'll call RBD, seeks one point

18    one million dollars in counter security from plaintiff North

19    Offshore pursuant to Rule E(7) of the supplemental rules for

20    certain admiralty and maritime claims.  I'm denying that motion

21    for the reasons set forth.

22           The facts are as follows.  On February 16, 2004,

23    North Offshore entered into a three-year charter party with RBD

24    for the Aldoma, which is owned by non-party AMNGR, a Russian

25    company.

1    Disputes arose in connection with that charter party,

2 and North Offshore brought a variety of claims against RBD in

3 an arbitration that was held in Norway.  The arbitration panel

4 subsequently made two separate awards to North Offshore in

5 September of 2006 and April of 2007, and the record reflects

6 that RBD has since paid those awards.

7    However, North Offshore also has additional claims

8 against RBD of approximately eight hundred thousand dollars,

9 also arising out of the February 2004 charter party.  North

10 Offshore intends to have those claims adjudicated in Norwegian

11 arbitration proceedings.

12    Has that actually been started, sir?

13    MR. FREVOLA:  Your Honor, I spoke to my client this

14 afternoon, and the arbitration that had been commenced and was

15 challenged as procedurally incorrect was stopped, and then the

16 second arbitration demand that had been made has been now

17 joined.  The panel has been convened.  And I understand that

18 the filings will happen probably some time in the next month in

19 terms of the offensive claim by North Offshore.

20    THE COURT:  All right.

21    In connection with North Offshore's outstanding

22 claims against RBD, North Offshore initiated this action

23 seeking an order of attachment pursuant to Rule B of the

24 supplemental rules for certain admiralty and maritime claims.

25    In April of 2007, I authorized an attachment of up to

1 five hundred thirty-two thousand dollars of RBD's funds, and I
2 later amended that order of attachment in July to authorize an
3 attachment of up to nine hundred eighty-eight thousand dollars.

4 North Offshore, I'm informed in the papers, attached
5 approximately four hundred thousand dollars of RBD's funds in
6 September of this year.

7 RBD has also filed an answer and counterclaim
8 pursuant to Supplemental Rule E(7) in August of this year
9 asserting that North Offshore breached a March 5, 2004 side
10 agreement between the two parties pursuant to which RBD had the
11 option of extending the time charter for the Aldoma.

12 RBD sought Offshore's consent to the exercise of the
13 option in January 2007 but, according to the counterclaim,
14 North Offshore refused, and RBD now seeks approximately
15 thirteen million dollars in damages.

16 North Offshore responds that a condition precedent to
17 the exercise of the option was the consent of AMNGR, the owner
18 of the vessel, but that vessel owner refused to give its
19 consent for commercial reasons. As a result, North Offshore
20 asserts that extension of the time charter was not possible.
21 It couldn't do it, it says, and it therefore did not breach any
22 agreement with RBD.

23 Defendant, as I said, seeks one point one million
24 dollars in counter security pursuant to Rule E(7), the relevant
25 part of which states, quote:

1              "When a person who has given security for damages in

2              the original action asserts a counterclaim that

3              arises from the transaction or occurrence that is the

4              subject of the original action, a plaintiff for whose

5              benefit the security has been given must give

6              security for damages demanded in the counterclaim,

7              unless the court, for cause shown, directs

8              otherwise."

9         Here, RBD asserts that it is entitled to counter

10   security pursuant to Rule E(7) because RBD has had

11   approximately four hundred thousand dollars of its funds

12   attached as security for North Offshore's claims in the

13   original action.

14        The defendant states that its counterclaim arises

15   from the same transaction or occurrence that is the subject of

16   the original action and is therefore entitled to security by

17   right.

18        RBD also asserts that counter security should issue

19   because its counterclaim satisfies the minimal pleading

20   requirements for admiralty claims seeking security pursuant to

21   Rule B of the supplemental rules.  However, it's not Rule B

22   that applies here.  The rule in this circuit is that, quote:

23              "An attachment should issue --"

24   -- brackets --

25              "-- pursuant to Rule B --"

1 | -- end brackets --

2 |         "-- if the plaintiff shows that, one, it has a valid

3 |         prima facie admiralty claim against the defendant;

4 |         two, the defendant cannot be found within the

5 |         district; three, the defendant's property may be

6 |         found within the district; and four, there's no

7 |         statutory or maritime law bar to the attachment."

8 | End quote. Aqua Stoli Shipping Limited v. Gardner Smith Party

9 | Limited, 460 F. 3d 434, comma, four four five, Second Circuit

10 | (2006).

11 |         Under Rule B, courts need not engage in any broader

12 | equitable inquiry or apply a needs test requiring the plaintiff

13 | to show that even if the defendant cannot be found within the

14 | district the attachment is necessary to obtain jurisdiction

15 | over a defendant or to secure a potential judgment. That is a

16 | quote from Aqua Stoli at four four six.

17 |         As I said, however, Rule B does not apply here.

18 | Motions for counter security are brought pursuant to Rule E(7),

19 | which, quote:

20 |         "-- makes clear that the trial court possesses broad

21 |         discretion in deciding whether to order counter

22 |         security."

23 | End quote. Result Shipping Co v. Ferruzzi, F E R R U Z I

24 | [sic], Trading USA Inc, 56 F. 3d 394, comma, three nine nine,

25 | Second Circuit (1995).

1  Courts consider several factors in determining how to
2  exercise their discretion, but, quote:
3  "-- the core purpose of the counter security rule is
4  to place the parties on an even footing."
5  Semi colon.
6  "If one party is deprived of the use of its property
7  during the litigation but the adverse party is not,
8  despite the pendency of reciprocal claims, the party
9  with the security may have unfair leverage in the
10 action."
11 End quote.  Finecom -- that's F I N E C O M -- Shipping Limited
12 v. Multi-Trade Enterprises A.G., 2005 AMC 2952, Southern
13 District (2005).

14 In addition, the trial court must be guided by the
15 essential and equitable purpose of the rule.  In doing so, the
16 court must weigh the importance of the security interest giving
17 rise to the initial seizure and the burden of posting counter
18 security against the potential injustice of requiring the
19 defendant counter-claimant to post security without affording
20 reciprocal protection.  That is a quote from Result Shipping at
21 four hundred.

22 Nothing in Aqua Stoli changes the principle that I
23 have just set forth which suggests that a motion for counter
24 security pursuant to Rule E(7) need only meet the basic
25 requirements of an admiralty claim brought pursuant to Rule B.

1  Even post-Aqua Stoli, motions for counter security are subject
2  to the broad discretion of the court.  See <u>Clipper Shipping</u>
3  <u>Lines Limited</u> v. <u>Global Transport Oceanico</u> -- that's O C E A N
4  I C O -- <u>S.A.</u>, 2007 Westlaw 646329 at star one, Southern
5  District New York, February 27, 2007.

6         Thus, whether to grant or deny the motion for counter
7  security is an equitable determination addressed to the court's
8  discretion.  Let's take a look at those factors to determine
9  how discretion should be exercised.

10         To begin with, RBD has failed to demonstrate that its
11  counterclaim arises from the same, quote:

12         "-- transaction or occurrence that is the subject of
13         the original action."

14  End quote.  North Offshore contends that the February 2004
15  charter party and the March 2004 side agreement constitute
16  entirely separate transactions, that the counterclaim cannot be
17  considered a mandatory counterclaim, and that RBD cannot,
18  therefore, rely on Rule E(7).

19         The limited evidence before this Court suggests that
20  RBD's counterclaim for the breach of a purported charter
21  extension and North Offshore's claim in the original action
22  which involved non-payment of hire for use of the Aldoma and
23  expenses associated with RBD's alleged failure to redeliver the
24  vessel within the agreed redelivery range raise entirely
25  separate issues of law and fact.  This weighs against treating

1  RBD's counterclaim as a mandatory counterclaim entitled to

2  counter security.  So that first factor cuts against granting

3  RBD's motion.

4        So there's a second factor, which is that RBD has

5  failed to submit any evidence to counter the proposition that

6  its counterclaim is entirely without merit.  North Offshore, on

7  the other hand, has submitted affidavits from Svein -- that's S

8  V E I N -- Hoel, H O E L, managing director of North Offshore,

9  and Oleg Mnatsakanyan, M N A T S A K A N Y A N, the director

10  general of AMNGR.

11        Those affidavits support Offshore's position that it

12  could not extend RBD's charter because the condition precedent

13  to that extension -- namely, the consent of the vessel owner --

14  was not fulfilled based on a commercial decision by the vessel

15  owner.  See Hoel affidavit, paragraphs five to nine, and the

16  affidavit of the director general of AMNGR at paragraphs six to

17  eleven.

18        RBD has not submitted any evidence to the Court to

19  contravene those accounts or to explain how, in light of those

20  facts, North Offshore could be deemed in breach of the March

21  2004 side agreement.  A court, quote:

22             "-- should not require counter security where the

23             counterclaim is frivolous or so lacking in merit that

24             the court can only conclude that the counterclaim was

25             advanced solely to secure a negotiating advantage

1 | over the complainant."

2 | End quote.  Titan Navigation Inc v. Timsco -- T I M S C O --

3 | Inc, 808 F. 2d 400 at four oh four, Fifth Circuit (1987).

4 | RBD's counterclaim is highly speculative -- it

5 | relates to lost profits -- and is insufficiently supported.

6 | Those deficiencies weigh against directing North Offshore to

7 | post security.  See Ythan -- that's Y T H A N -- Limited v.

8 | Americas Bulk Transport Limited, 336 F. Supp. 305, comma, three

9 | oh nine, Southern District (2004), and U.S. Maritime Services

10 | Inc v. Trade Ventures Inc, 1998 U.S. District Lexis, 10608 at

11 | star six, Eastern District Louisiana, July 8th, 1998.

12 | Third, North Offshore has submitted affidavit

13 | testimony and a financial statement showing that posting

14 | counter security would be extremely burdensome and would compel

15 | North Offshore, a small company with limited resources, to

16 | release the RBD funds that it has already appropriately

17 | attached to secure its own claims against RBD.  See Hoel

18 | affidavit, paragraphs fifteen to sixteen and twenty-four.

19 | North Offshore asserts that a significant reason for

20 | its lack of liquidity arises from the fact that it was required

21 | to pay charter hire for AMNGR for which it has not yet been

22 | paid by RBD in connection with the Aldoma.

23 | All of these factors suggest that granting the motion

24 | for counter security would not result in putting the parties on

25 | an equal footing, which is what Rule E(7) seeks to promote.

1 Instead, it would serve on the state of this record to thwart
2 the purpose of North Offshore's Rule B attachment.  Rule E(7),
3 quote:

4          "-- is not intended to impose burdensome costs on a
5          plaintiff that might prevent it from bringing a
6          suit."

7 End quote -- or, on that same logic, for maintaining an action.
8 Result Shipping, 56 F. 3d at 400.

9          Thus, the factors I've set forth above, including
10 North Offshore's financial circumstances and RBD's role in
11 North Offshore's difficult financial position, provide
12 additional good cause to deny the motion for counter security.

13          In conclusion, the governing rule here on counter
14 security is Rule E(7), not Rule B.  Under E(7), such a motion
15 is addressed to the discretion of this Court, and three factors
16 specifically weigh against directing the granting of the
17 motion.

18          First, the counterclaim potentially arises from a
19 different transaction.

20          Second, the counterclaim, at least on the state of
21 the record so far, appears primarily aimed at thwarting North
22 Offshore's prosecution of the original action.

23          And third, North Offshore is not financially able to
24 post counter security without releasing the RBD assets that it
25 has already attached.

1          That is my decision, and a minute order will enter
2    that states for the reasons set forth on the record today the
3    motion by RBD for counter security is denied.  All right.
4    Thank you, gentlemen.

5          Where do we go from here?  I take it that arbitration
6    is going to go forward.  Does it make sense to just bring you
7    in in a couple of months?  I don't know where you want to go.

8          Mr. Harwood?

9          MR. HARWOOD:  Yes, thank you, Your Honor.  And I
10   appreciate the Court's time and its thorough opinion, even
11   though it was a decision against me.  I just did want to add --

12         THE COURT:  I think you've told me that before, sir,
13   in that case you had -- I think it had to do with mushrooms.
14   You were always very gracious when the ruling goes against you.
15   I assume when the ruling goes in your favor, you're equally
16   gracious.

17         MR. HARWOOD:  I try to be, Your Honor.  Yes.  That
18   was an interesting case.

19         THE COURT:  It was, indeed.

20         MR. HARWOOD:  Your Honor, I just wanted to add that I
21   had spoken to Mr. Frevola before this to confirm that our
22   client -- my client had, indeed, instructed us to go forward
23   with our proposal at that hearing we had last month, withdrawal
24   of the counter security request, subject to reservation.

25         So I think we can see that if, in fact, as the

1  plaintiff alleges, this is not the same transaction or
2  occurrence, and -- than they had suggested -- and indeed, I
3  wrote in my accepting that position RBD should be entitled to
4  maintain its own and separate action for Rule B relief.  But
5  we'll see what comes about in that respect.
6          I would suggest agreement to Your Honor's proposal
7  for putting it on the calendar for next year, obviously, as the
8  merits aren't for this Court.
9          THE COURT:  All right.  But when do you want it on?
10  How long an adjournment?  Talk to each other.  I'll put it on
11  whenever you want.
12          MR. HARWOOD:  Some time -- February's fine by me,
13  Your Honor.
14          THE COURT:  Pardon me?
15          MR. FREVOLA:  Do you want to say February?
16          MR. HARWOOD:  Yeah.
17          MR. FREVOLA:  That would make sense, Your Honor,
18  because I don't believe that the actual arbitration itself, you
19  know, best case, would be filed, let's say, until the beginning
20  of December, and nothing's going to happen in December.
21          THE COURT:  But then what can we accomplish in
22  February?
23          MR. FREVOLA:  Perhaps nothing.
24          THE COURT:  Right.
25          MR. FREVOLA:  That might be too early.

1         THE COURT:  What about dismissing the claim without
2  prejudice to its renewal at the conclusion of the arbitration?
3         MR. FREVOLA:  Would that be the counterclaim, Your
4  Honor, or the --
5         THE COURT:  Well, it would be --
6         MR. FREVOLA:  If we can ask for the funds, Your
7  Honor, I think that we could -- I could approach my client to
8  essentially say take the security, perhaps stop serving the
9  Rule Bs at this juncture, and put the money in an escrow
10 account, and we reconvene later.

11        The only issue with that, obviously, Your Honor, is
12 that we've only got about fifty percent of the security, and I
13 could see where they might say we've only got fifty percent of
14 the security.  I cannot speak for them.  I do know that their
15 circumstances are such that they are in a difficult position,
16 so they may think that pressing the remainder of their security
17 would be the best thing to do.

18        Perhaps we could get some type of undertaking from
19 Rolv Berg Drive in the form of a bank guarantee, or a letter of
20 undertaking, or something of that nature where we could stop
21 the Rule Bs and dismiss this case.  Now, I think we'd be
22 willing to entertain that as well, Your Honor.

23        THE COURT:  Well, why don't I just put it over to
24 February?  And the parties should obviously talk to each other
25 to see if they can work something out.

1        MR. HARWOOD:  Very good, Your Honor.

2        THE COURT:  All right?  And if you do settle up

3  before then, let me know.

4        MR. FREVOLA:  I'm sorry, Your Honor, I was going to

5  say -- Your Honor probably is aware of this, but this is

6  conceivably a very important decision precedentially.  Would

7  Your Honor mind if we got a transcript of this and published it

8  in the AMCs?  Because it is a -- there are cases that are

9  fighting this issue in multiple places here, Your Honor, in the

10  Southern District right now.

11        THE COURT:  You're talking about what rule governs

12  counter security?

13        MR. FREVOLA:  I'm talking about whether the prima

14  facie Aqua Stoli case or --

15        THE COURT:  Applies to counter security?

16        MR. FREVOLA:  I'm fighting that very issue before

17  Judge Sullivan right now, Your Honor.

18        THE COURT:  Well, for some reason, in admiralty cases

19  every decision I have people are telling me it's so important

20  in light of -- and then they arbitrarily choose either Winter

21  Storm or Aqua Stoli.

22        No, one of the advantages of being able to dictate a

23  decision into the record is it's not as -- it doesn't read as

24  well as something that's going to be published.  If you want it

25  to be published, I'll clean it up and publish it as an opinion,

1  and then you'll be able to do whatever you want with it.  But I
2  don't want you to take this transcript, all right?  I'll try to
3  do that in the next couple of weeks.

4          MR. FREVOLA:  Thank you, Your Honor.

5          THE COURT:  Okay.

6          MR. HARWOOD:  Your Honor, perhaps I could note that
7  at the hearing we had -- because the first time that the
8  argument came up that the counterclaim under the side letter
9  was -- arose under a separate side letter agreement -- when we
10 made our application for counter security, we weren't aware
11 that the plaintiff considered that our counterclaim was not a
12 Rule E counterclaim or a mandatory counterclaim.

13         So we didn't have the opportunity to withdraw our
14 request for counter security until after their position was
15 known, which is what we stated on the record at that hearing.

16         THE COURT:  Wait, I don't understand.  You could have
17 withdrawn your motion for counter security at any time up to
18 the -- when I started reading the decision, but you never
19 withdrew it, right?

20         MR. HARWOOD:  We did at the hearing, Your Honor.

21         THE COURT:  You did?

22         MR. HARWOOD:  I stated that on the record at the
23 hearing, yes.

24         THE COURT:  So then why did I go to the trouble of
25 deciding this?

1            MR. HARWOOD:  Well, Your Honor, I apologize, but Your

2    Honor said at the hearing -- and I haven't got the transcript -

3    - that you had made some notes as to what would guide your

4    decision.

5            I don't think either of us came in here expecting you

6    to -- Your Honor to have taken the trouble to reach the

7    decision and to read it from the bench, because, in fact, we

8    had discussed what we were going to tell the Court as to what

9    our clients' respective positions were.

10           THE COURT:  I see.

11           MR. HARWOOD:  So that's --

12           THE COURT:  Are you telling me that at the -- at the

13   October 3rd hearing you withdrew the motion?

14           MR. HARWOOD:  That's right, Your Honor.  I said that

15   my client had taken the commercial decision to withdraw the

16   motion to -- in order to go with its own Rule B, which -- with

17   its own inherent risk, given the fact that he's claimed not to

18   have any money.  So that was the point.

19           Why would we bring a Rule B if, in fact, this

20   plaintiff -- when it's subject to his own Rule B action against

21   it?  It doesn't have any money shuttling backwards and

22   forwards.  And that was why I said on the record this was a

23   commercial risk that my client was prepared to take.  And

24   indeed, it's what I said in the brief, which I know was filed

25   the afternoon before the -- or the morning of the hearing.

1          Accepting that position, RBD should be entitled to
2   maintain its own separate action, so --

3          THE COURT:  No, I -- I -- I definitely remember that,
4   but I thought what that point was is that if you lose here, you
5   maintain the ability to bring a separate action.  I remember
6   that discussion.  And I thought that my either mental response
7   or actual response to that -- I don't know whether I
8   articulated it -- is well, if you feel that you can bring a
9   separate action under Rule B, you should go ahead and bring a
10  separate action under Rule B.  But I -- that discussion I
11  remember.

12         MR. HARWOOD:  I'm pretty certain I -- I withdrew it
13  on the basis of the representation I was going to make, or did
14  make, at the time that we will proceed with our own Rule B,
15  accepting Mr. Frevola's argument for his purposes that it was a
16  separate contract.

17         THE COURT:  Well, is there a transcript of that?

18         MR. HARWOOD:  I haven't got it, Your Honor, because
19  unfortunately I went away pretty shortly after that hearing for
20  about two and a half weeks, and my first week was -- so --

21         THE COURT:  Yes.

22         MR. FREVOLA:  Your Honor, I'm pretty sure there is a
23  transcript.

24         THE COURT:  Yes, I'm sorry, my notes indicate October
25  3rd, pretrial conference on counter security held and taped, so

1 | there is a transcript of it.

2 | But, Mr. Harwood, what you say is really inconsistent

3 | -- well, it's not entirely inconsistent -- with the parties are

4 | going to try to resolve this, and that's why I began with well,

5 | I haven't heard from any of you.

6 | And that, indeed, is consistent with my thinking what

7 | you were saying is if you lose this motion, you will then

8 | consider filing a separate proceeding under Rule B.

9 | MR. HARWOOD:  I think it gets us to the same result,

10 | Your Honor.  I just wanted to make clear that that was what I

11 | had said at that October hearing.  So if Your Honor is going to

12 | write the opinion -- and I don't have an objection to it, but

13 | is what we asked -- I think the October 3rd transcript probably

14 | is --

15 | THE COURT:  Okay.

16 | MR. HARWOOD:  -- will speak for itself.

17 | THE COURT:  Somebody should get that October 3rd

18 | transcript and send it to my chambers.

19 | MR. HARWOOD:  I will, Your Honor.

20 | THE COURT:  And then I'll know whether or not to

21 | write on this.

22 | MR. HARWOOD:  But I don't think Mr. Frevola would

23 | dispute that we both came here with the expectation we'd be

24 | telling -- advising the Court what our clients' positions were,

25 | as opposed to Your Honor having gone to the trouble of --

1        THE COURT:  My just starting -- going forward and
2  writing.

3        MR. HARWOOD:  Yeah.  I apologize for the effort
4  you've --

5        THE COURT:  No, no, no.  No.  I see.  So what you're
6  saying is we thought I was going to formally withdraw it today,
7  and, Judge, you've -- especially if this gets published, you've
8  hurt my position in other -- in other actions.

9        MR. HARWOOD:  I wouldn't say that, Your Honor.  I
10  think we will -- the Court's ruling is correct that the Court
11  does have discretion always in a Rule E case.  It's not -- I
12  don't think the Rule E -- speaking not in terms of this
13  particular client, but --

14        THE COURT:  Yeah.

15        MR. HARWOOD:  -- my view is in admiralty law would be
16  the Court always has discretion and it's not automatic.

17        MR. FREVOLA:  And Your Honor, it's quite clear that -
18  - and I'll say this on the record -- that Your Honor's decision
19  here is based on an incomplete set of facts and does not have -
20  -

21        THE COURT:  Well, that's why I said very -- I said
22  based on what I know so far.

23        MR. FREVOLA:  There's no res judicata, collateral
24  estoppel effect, and we would not --

25        THE COURT:  No, I understand, but you're -- no, I

1 understand that, but for the very reason that you asked me to
2 publish it is why you want it.  It still gives you half a leg
3 up.

4       All right.  Let me think about this and let's get the
5 transcript.

6       MR. HARWOOD:  Yes, Your Honor, and that's exactly a
7 reason, I should add, that we didn't go to the expense of
8 putting in rebuttal affidavits, because that wasn't the route
9 we were going to go down.  That's -- obviously, any Rule B
10 complaint alleging the allegations which are the foundation for
11 the counter security is going to have to be a prima facie case
12 which is properly supported and is going to address the
13 evidence against that.

14       So that's the reason that we didn't put any rebuttal
15 evidence in.

16       THE COURT:  Okay.

17       MR. HARWOOD:  Thank you, Your Honor.

18       THE COURT:  Thank you.

19       MR. FREVOLA:  Thank you, Your Honor.

20              *    *    *    *    *

21       I, KRISTIN M. RUSIN, court approved transcriptionist, certify that the
22 foregoing is a correct transcript from the official electronic sound recording of the proceedings
23 in the above-entitled matter.
24       Transcript is certified original only if signed in green ink.
25       11/21/07